HURON CTY. BD. OF COMMRS., Appellant and Cross–Appellee,

v.

SAUNDERS et al., Appellees and Cross–Appellants.

[Cite as *Huron Cty. Bd. of Commrs. v. Saunders,* 149 Ohio App.3d 67, 2002-Ohio-3974.]

Court of Appeals of Ohio,
Sixth District, Huron County.

Nos. H–01–055 and H–01–056.

Decided Aug. 2, 2002.

68

Michael E. Stinn, for appellant and cross-appellee.

James T. Murray, for appellees and cross-appellants.

_____

MELVIN L. RESNICK, Judge.

{¶ 1}  In this appeal from a judgment of the Huron County Court of Common Pleas, we are asked to determine whether the trial court erred in granting summary judgment to defendants-appellees and cross-appellants Patrick R. Saunders, Antoinette N. Saunders, and Patrick R. Saunders II. Plaintiff-appellant and cross-appellee, the Huron County Board of Commissioners ("board"), maintains that the following errors occurred in the proceedings below:

{¶ 2}  "Assignment of Error No. 1: The trial court erred in applying the made whole doctrine set forth in *Grine v. Payne* (Apr. 15, 2002), No. 01–0709, 2002 WL 549791, 2001 Ohio App. Lexis 1342, to this case.  The made whole doctrine has no application to this case as there are sufficient assets available, including insurance proceeds from the Progressive Insurance Company, to pay the amounts awarded to the Saunders[es]."

{¶ 3}  "Assignment of Error No. 2: The trial court improperly gave priority to one of three general creditors of the estate of Carl E. Mortensen.  The money available from the Progressive Insurance Company should have been pro-rated between the Saunders[es]."

{¶ 4}  Appellees and cross-appellants assert the following cross-assignments of error:

{¶ 5}  "The court erred when it read the plan document and the summary plan description incorrectly and concluded that the plan could take reimbursement

without accounting for attorney fees and costs of obtaining recovery from the tortfeasor."

{¶ 6} "Entirely apart from the contract language, the trial court acted inequitably when it held that the attorney fees could not be charged to the party who benefits from the acquisition of the fund."

{¶ 7} On September 23, 1995, Patrick II was severely injured in a motor vehicle accident caused by the negligence of the decedent, Carl E. Mortensen. At the time of the accident, Patrick's parents, that is, Patrick R. and Antoinette, were employed by Huron County and were therefore eligible for health benefits under a plan provided by Huron County. The board is the "Plan Administrator."

{¶ 8} It is undisputed that, under the Huron County Health Benefit Plan, the county paid $204,768.70 in medical benefits for injuries received by Patrick II in the motor vehicle collision. Pursuant to the health plan's subrogation clause:

{¶ 9} "The Plan shall be entitled to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery a claimant, his/her parents or Dependents may have against any person, * * * legally responsible in connection with the * * * injury * * * on which a claim is based. The Plan's rights shall be limited to the payments made by the Plan on the claim."

{¶ 10} A summary description of the health plan is incorporated by reference and reads:

{¶ 11} "Subrogation

{¶ 12} "If the Plan pays benefits for you, or your dependent, because of an injury * * * caused by a third party, then the Plan will pay its benefits on the condition and with the agreement and understanding that you, or your dependent, will reimburse the Plan * * * from the amount you recover from the third party. You will not be required to reimburse the Plan for more than you receive by way of settlement or recovery on a judgment. If you recover less than the Plan has paid, you will not have to pay any additional money out of your own pocket. If you recover more than the Plan has paid, you will be entitled to keep the difference between what you recovered and what the Plan has paid.

{¶ 13} "The Plan's right to reimbursement from amounts you recover because of your claim against a third party is technically called 'subrogation.' It applies to all claims, demands, actions and rights of recovery you may have against a third party * * * and the third party's insurers for your * * * injury. The Plan's subrogation rights apply to your own uninsured motorist or no-fault automobile insurance coverage too."

{¶ 14} In addition, and prior to providing any medical benefits, the board required Patrick Sr. and Antoinette to sign "reimbursement agreements" that required them to reimburse the plan "from any settlement or judgment proceeds" that they might receive "to the full extent of the amounts paid without regard to the characterization of or purpose for the payment and without offset for legal fees or other expenses incurred in securing the recovery from the third party." The agreement reiterates the county's right of subrogation as set forth in the health plan to reimbursement of the total amount provided for medical treatment from any source available to the insured.

{¶ 15} The parties agree that in 1996, Patrick II and his parents initiated a negligence action in the Erie County Court of Common Pleas against, among others, the estate of Carl Mortensen. After a jury trial in November 2000, appellees were awarded a judgment against only the estate in the amount of $454,768.70. Of this total, $250,000 was awarded to Patrick II; his parents were awarded $102,384.35 each, with the jury specifying that these awards were for the parents' medical payment claims. There is no evidence in the record of this cause showing that appellees received any payment of this judgment, either from the estate of Carl Mortensen or from other sources, specifically, from the decedent's motor vehicle liability insurance policy with Progressive Insurance Company. The policy has a limit of $100,000.

{¶ 16} In November 2000, the board commenced the instant declaratory judgment action asking the court to declare that, under the subrogation clause of the Huron County Health Benefit Plan, appellees were required to pay over to the county one hundred percent of the amount paid out by the plan for Patrick II's medical care. Essentially, the board requested that the court declare that the Huron County Health Benefit Plan is entitled to any proceeds obtained by settlement or judgment from the estate of Carl Mortensen and/or insurance, without any setoff for attorney fees or other expenses incurred by appellees in seeking recovery, and prior to any payment to appellees. In other words, appellees would retain only the amount, if any, remaining after the reimbursement of $204,768.70 to the health plan.

{¶ 17} Appellees filed an answer and a counterclaim asserting (1) that the subrogation agreement was internally inconsistent and unenforceable; (2) that the reimbursement agreement lacked consideration and was unenforceable; (3) that the board be required to pay over $170,000 in advancements and attorney fees incurred in the prosecution of the negligence action as a prerequisite to subrogation; and/or (4) that the court find that the board was not entitled to any direct payments under the subrogation provision of the health plan.

{¶ 18} The board filed a motion for summary judgment. Appellees filed a motion for partial summary judgment in which they asked the court to find that

they, not the board, were entitled to receive the $100,000 from any settlement with Progressive Insurance Company.

{¶ 19} In its judgment entry on both motions, the trial court adopted the "made whole doctrine" espoused by this court in *Grine v. Payne* (Mar. 23, 2001), Wood App. No. WD–00–044, 2001 WL 279767. The court therefore granted appellees' motion for partial summary judgment, finding that the health plan could not be reimbursed for medical payments until Patrick II was fully compensated for his injuries, that is, until the $250,000 judgment awarded to him is satisfied. Therefore, the court determined that Patrick II should receive the full $100,000 from Progressive Insurance Company. The court held that the subrogation clause of the health plan is plain and unambiguous as to Patrick R. and Antoinette Saunders. Consequently, the board could seek the reimbursement of $204,768.70, without any setoff of attorney fees and costs, upon the parents' recovery of their judgment from the tortfeasor. This appeal followed.

{¶ 20} The standard of review applicable to the parties' assignments error is found in Civ.R. 56. A motion for summary judgment can be granted only if (1) no genuine issue of material fact remains to be litigated, (2) it appears from the evidence that reasonable minds can reach but one conclusion and that conclusion is adverse to the nonmoving party, and (3) the moving party is entitled to summary judgment as a matter of law. Civ.R. 56(C); *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus.

{¶ 21} Pursuant to the Declaratory Judgment Act, R.C. Chapter 2721, "Any person interested under a * * * written contract, * * * may have determined any question of construction or validity arising under such instrument * * * and obtain a declaration of rights, status, or other legal relations thereunder." R.C. 2721.03. To maintain an action for declaratory judgment, a party must show that a real, justiciable controversy exists between adverse parties, and that speedy relief is necessary to the preservation of rights which may be otherwise impaired or lost. *Ohio Assn. of Life Underwriters, Inc. v. Duryee* (1994), 95 Ohio App.3d 532, 534, 642 N.E.2d 1145; *Buckeye Quality Care Centers, Inc. v. Fletcher* (1988), 48 Ohio App.3d 150, 154, 548 N.E.2d 973. A decision to grant or deny declaratory relief will not be reversed unless shown to be an abuse of discretion. *Danis Clarkco Landfill Co. v. Clark Cty. Solid Waste Mgt. Dist.* (1995), 73 Ohio St.3d 590, 653 N.E.2d 646, paragraph three of the syllabus.

{¶ 22} In its first assignment of error, the board contends that the trial court erred in applying the made-whole doctrine adopted by this court in *Grine*. Specifically, the board claims that the made-whole doctrine is inapplicable to their claim for reimbursement from Patrick R. and Antoinette Saunders because they entered into a separate agreement to reimburse the full amount of $204,768.70.

Apparently, the board contends, for the first time on appeal, that the reimbursement agreement provides it with an independent claim to any monies recovered by Patrick R. and Antoinette. The board further asserts that the made-whole doctrine is inapplicable to this cause because there are sufficient assets in the estate of Carl Mortensen, as well as the $100,000 from Progressive Insurance Company policy, to satisfy the $454,768.70 judgment in favor of appellees.

{¶ 23} The board never raised its first argument in the trial court. Indeed, the reimbursement agreement was described by the board in its motion for summary judgment simply as a confirmation of its subrogation rights. Well-settled law provides that " '[a] party may not assert a new legal theory for the first time before an appellate court.' " *Ohio Farmers Ins. Co. v. Estate of Brace* (1997), 116 Ohio App.3d 395, 401, 688 N.E.2d 298, quoting *AMF, Inc., v. Mravec* (1981), 2 Ohio App.3d 29, 32, 2 OBR 32, 440 N.E.2d 600. See, also, *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 70 O.O.2d 123, 322 N.E.2d 629. As the issue of whether the reimbursement contract imposed a separate right on Patrick R. and Antoinette Saunders to reimburse the medical expenses properly was not raised, we shall disregard this argument.

{¶ 24} We now turn to the question of whether the trial court erred in applying the made-whole doctrine to the instant cause.

{¶ 25} It is undisputed that pursuant to the subrogation provision of the health plan/summary description, the board is entitled to repayment of medical expenses expended on Patrick II's behalf. The question is whether this claim should be given precedence over the injured parties' rights to recovery. On this question, we agree with the trial court in adopting the rule set forth in *Grine*.

{¶ 26} In *Grine*, Rachel Grine was seriously injured in a motor vehicle accident caused by Susan Payne. Rachel was a covered dependent under her mother's health plan, which was provided by mother's employer, the city of Fostoria. The Fostoria health plan contains a subrogation/reimbursement clause identical to the summary description of the Huron County Health Benefit Plan, the only difference being that the health plan in this cause includes subrogation rights applicable to the insured's uninsured and no-fault motor vehicle insurance.

{¶ 27} Fostoria paid over $41,000 of Rachel's medical expenses. Rachel settled her claim against Payne for the limit, $25,000, of Payne's motor vehicle liability insurance and received $75,000 from her own underinsurance carrier. In *Grine*, Fostoria sought the full sum it paid in medical expenses from any and all of the funds recovered by Rachel.

{¶ 28} After a bench trial, the trial judge found that, as a result of the motor vehicle accident, Rachel incurred medical expenses in the amount of $53,395.42 and was entitled to $115,000 for pain and suffering. The court then found that

Fostoria was entitled to priority under the terms of the subrogation provision, but limited the recovery of medical expenses to the $25,000 limit of Payne's liability policy.

{¶ 29} On appeal, Rachel Grine argued that prior to Fostoria's right to recover any of the medical benefits it paid, "she must be fully compensated for her injuries, or 'made whole.'" Id.

{¶ 30} After discussing recent trends in Ohio law,[1] this court found that "an insurer's subrogation interests will not be given priority where doing so will result in less than full recovery to the insured." Id., citing *Porter v. Tabern* (Sept. 17, 1999), Champaign App. No. 98–CA–26, 1999 WL 812357. In applying this precept to *Grine*, we concluded that Rachel, after deducting the $41,000 in medical expenses, was not fully compensated for her injuries. We therefore found that the trial court erred in awarding $25,000 to Fostoria, noting that the effect of the award was to take away all recovery from the tortfeasor. Id. We further observed that Fostoria, as the insurance provider, "and not its insureds, must accept and be able to bear certain financial risks."

{¶ 31} The board maintains, as it did below, that *Grine* is inapplicable because there are sufficient assets in the Mortensen estate to satisfy appellees' judgment. The board's assertion is based upon speculation as to the worth of the estate's and appellees' ability to recover from that estate. Furthermore, there is no evidence in the record of this cause that, as of the time of the judgment appealed from, appellees recovered any part of a $100,000 settlement with Progressive Insurance Company. Even if we were to assume that they had, appellees, in particular, Patrick II, would not be fully compensated. As a result, we find no error on the part of the trial court in applying the made-whole doctrine to this cause. Accordingly, the board's first assignment of error is found not well taken.

{¶ 32} In its second assignment of error, the board contends that the trial court erred in holding that the entire $100,000 from Progressive Insurance Company should, if recovered, be paid to Patrick II alone. The board argues that the $100,000 should be paid pro rata between Patrick II and his parents.

{¶ 33} We are of the opinion that the trial court could interpret the Huron County Health Benefit Plan and summary plan description in this declaratory

---

1. *Blue Cross & Blue Shield Mut. of Ohio v. Hrenko* (1995), 72 Ohio St.3d 120, 647 N.E.2d 1358; *Moellman v. Niehaus* (Feb. 5, 1999), Hamilton App. No. C–971113, 1999 WL 49370; *Porter v. Tabern,* supra; *Cent. Res. Life Ins. Co. v. Hartzell* (Nov. 30, 1995), Tuscarawas App. No. 94AP120094, 1995 WL 768553; *Johnson v. Progressive Ins. Co.* (Dec. 23, 1999), Lake App. No. 98–L–102, 1999 WL 1313672. In addition, see *Erie Ins. Co. v. Kaltenbach* (1998), 130 Ohio App.3d 542, 546–547, 720 N.E.2d 597.

judgment action and find that application of the made-whole doctrine precludes the board from being reimbursed for the subject medical payments prior to the full compensation of the injured party or parties. We find, however, that the trial court could not allocate the purported $100,000 in liability insurance proceeds because no justiciable question exists as to that allocation.

{¶ 34} To repeat, for a cause to be justiciable, there must exist a real controversy presenting issues that are ripe for judicial resolution and that will have a direct and immediate effect on the parties. *Burger Brewing Co. v. Ohio Liquor Control Comm.* (1973), 34 Ohio St.2d 93, 97–98, 63 O.O.2d 149, 296 N.E.2d 261. Here, there is no real controversy because there is no evidence of the fact that appellees have recovered any portion of their award, including the alleged amount from the tortfeasor's liability insurer. Nor, for the same reason, will the court's decision concerning the $100,000 have any real and immediate effect on the parties.

{¶ 35} Accordingly, while the board's second assignment of error is found not well taken, the trial court's judgment, as it relates only to the allocation of the alleged $100,000 that may be received from Progressive Insurance Company, is ordered vacated. Nevertheless, those provisions of the court's judgment applying the made-whole doctrine and finding that Patrick II has the right to be fully compensated prior to his parents' right of recovery on their medical claim and the board's right to reimbursement is affirmed.

{¶ 36} Appellees argue in their first cross-assignment of error that the trial court erred in finding that no costs or legal fees should be subtracted from the amount of medical expenses admittedly owed to the county. Appellees claim that the language of the contract clearly and unambiguously provides that attorney fees and costs be deducted before reimbursement.

{¶ 37} In reaching its decision, the trial court construed the subrogation provision in the Huron County Health Benefit Plan. As a contract, the subrogation provisions of the health plan are subject to the rules of contract construction. *Grine,* supra.

{¶ 38} The lower court compared the language in the first paragraph of the subrogation provision, which does not provide for consideration of the insured's attorney fees and costs, to the second paragraph of that provision. The second paragraph discusses subrogation rights in those instances when the health plan benefit committee requests that the insured or his/her parents or dependents take action to recover as damages any payments made by the health plan. In the second circumstance, the insured/claimant is allowed to retain attorney fees and costs incurred by the insured/claimant.

{¶ 39} The court then applied the contract construction rule "expressio unius est exclusio alterius," which means the inclusion of a specific thing implies the exclusion of those not mentioned. *Helberg v. Natl. Union Fire Ins. Co.* (1995), 102 Ohio App.3d 679, 683, 657 N.E.2d 832. Consequently, the trial court found that because the contract did not provide for retention of attorney fees and costs in that paragraph (the first paragraph) applicable to this cause, the board was entitled to the total repayment of the over $204,000 owed to the health plan by appellees. We cannot find fault with this construction of the Huron County Health Benefit Plan.

{¶ 40} Appellees argue, nonetheless, that the term "proceeds," when read in conjunction with other language in the plan, must be interpreted as "net proceeds." Upon our review of the cited language and in light of the trial court's construction of the health plan on this point, we disagree. Therefore, appellees' first cross-assignment of error is found not well taken.[2]

{¶ 41} In their second cross-assignment of error, appellees argue that the attorneys who created the fund, that is judgment, are entitled to payment from that judgment. See *Cohen v. Goldberger* (1923), 109 Ohio St. 22, 27, 141 N.E. 656 (An attorney "may have a claim upon the fruits of a judgment * * * which he has assisted in obtaining."). This theory for the recovery of attorney fees was not raised in the trial court. We shall therefore disregard appellees' arguments concerning their right to collect attorney fees, separate and apart from the language of the Huron County Health Benefit Plan, in this appeal. Nonetheless, this finding does not preclude appellees from raising this issue in the appropriate vehicle, that is, their negligence action, at the appropriate time. Accordingly, appellees' second cross-assignment of error is found not well taken.

{¶ 42} The judgment of the Huron County Court of Common Pleas is affirmed, in part, and reversed and vacated, in part. Costs of this appeal are to be paid, in equal shares, by the board and appellees.

Judgment affirmed in part
and reversed in part.

JAMES R. SHERCK and RICHARD W. KNEPPER, JJ., concur.

---

2. The trial court declined to address the validity and import of the reimbursement agreements entered into by Patrick R. and Antoinette Saunders. Because the issue of attorney fees and costs can be decided solely on the language of the Huron County Health Benefit Plan, we too shall refrain from addressing any points raised with regard to the reimbursement agreements.