**NORTHERN BUCKEYE EDUCATION COUNCIL GROUP HEALTH BENEFITS PLAN, Appellant,**

v.

**LAWSON, Appellee.**

[Cite as *N. Buckeye Edn. Council Group Health Benefits Plan v. Lawson,* 154 Ohio App.3d 659, 2003-Ohio-5196.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–02–1298.

Decided Sept. 30, 2003.

660

Jennifer J. Dawson and Michael A. Gonzalez, for appellant.

Jennifer N. Brown and Joseph W. O'Neil, for appellee.

KNEPPER, Judge.

{¶ 1} This is an appeal from the judgment of the Lucas County Court of Common Pleas, which granted the motion for summary judgment filed by appellee, Karen W. Lawson, against appellant, Northern Buckeye Education Council Group Health Benefits Plan, and denied the motion for summary judgment filed by appellant. For the reasons that follow, we reverse the judgment of the trial court.

{¶ 2} Appellee had health insurance with appellant through her employer, Defiance City Schools. Appellant was a self-funded government group health care benefits plan, sponsored by the Northern Buckeye Education Council. Appellee's minor daughter, Emily Lawson, was injured in an auto accident. Pursuant to its plan of insurance, appellant paid medical expenses for Emily's injuries totaling $85,945.39. As a result of Emily's injuries, appellee recovered $100,000 from the tortfeasor's insurance company, which represented the tortfeasor's policy limits of liability, and $150,000 from appellee's underinsured motorist ("UM") carrier, which represented the UM policy limits ($250,000), less the amount paid by the tortfeasor's carrier ($100,000). On November 17, 2000, appellant filed a complaint against appellee seeking reimbursement of the medical benefits it provided. The parties filed cross-motions for summary judgment.

{¶ 3} Appellant argued in its motion for summary judgment that, pursuant to the plan, and, specifically, the terms of the Reimbursement and Subrogation Agreement ("the agreement"), which appellee signed, it was entitled to full reimbursement of the $85,945.39 that it advanced on appellee's behalf for medical expenses. Appellant also argued that appellee was not entitled to deduct from the reimbursement amount any costs, including attorney fees, appellee had incurred in relation to the settlement amount she received from the tortfeasor's and her UM carriers. The language in the plan, upon which appellant relied, stated as follows:

{¶ 4} "3.7 Subrogation Rights

{¶ 5} "Any payments made by this Plan for injury or illness caused by the negligent or wrongful act of any third party are made with the agreement and understanding that the covered person will reimburse the Plan for any amounts which are later recovered from the third party by way of settlement or in the satisfaction of any judgment. The amount which must be reimbursed to the Plan will be the lesser of the payments actually made by the Plan, or the amount received by the covered person from the third party. As security for the Plan's rights to reimbursement, the Plan will be subrogated to all of the covered

person's rights of recovery against a third party (or the party's insurers) to the extent of any payments made by the Plan. The Claims Administrator will withhold payments of claims made under this Plan, to the extent that the Claims Administrator has actual knowledge of a negligent or wrongful act of a third party, until the covered person or the covered person's legal representative executes a subrogation reimbursement agreement."

{¶ 6} The Reimbursement and Subrogation Agreement, which appellee signed following Emily's accident, states:

{¶ 7} "* * * I agree that if benefit payments are made on my behalf under the Plan and such payments are or may have been for treatment required due to the act of any third party, I will reimburse the Plan (or Northern Buckeye Education Council, as Plan sponsor) for any amounts which are later recovered from any third party, third party's insurer, or any other person, by way of settlement or in the satisfaction of any judgment of or upon any claims arising from said act, irrespective of whether any such settlement or judgment may or may not provide reimbursement to me for all injuries, illnesses, or other damages (including, without limitation, pain and suffering, consequential, punitive, exemplary or other damages, whether alleged, proven in court of law or otherwise substantiated); that the Plan is subrogated to my rights of recovery against any third party's insurer, or any other person or to the extent of any of the benefit payments made by the Plan or the amount of recovery whichever is less."

{¶ 8} Appellee argued in her motion for summary judgment that she and Emily had not been fully compensated by the insurance benefits received and, therefore, appellant was not entitled to reimbursement of the medical benefits it paid. Appellee argued that, pursuant to the make-whole doctrine in the state of Ohio, appellant is not entitled to reimbursement for the medical expenses it paid until appellee has received "full compensation," i.e., been made whole, for all injuries and damages. To the extent that federal case law concerning ERISA plans and the federal common law "make-whole doctrine" would apply, appellee additionally argued that, because appellant's plan fails to unambiguously "opt-out" of the make-whole doctrine, appellant would still not be entitled to reimbursement until appellee was fully compensated for the losses sustained.

{¶ 9} Alternatively, appellee argued that the agreement, which she signed after Emily sustained her injuries, was void for lack of consideration. Appellee argued that the agreement attempted to add contractual obligations before providing coverage for Emily's medical treatment, when, in fact, appellant was already legally obligated to provide such coverage.

{¶ 10} In response to appellee's motion for summary judgment, appellant argued that the language of the policy and the signed agreement clearly and unambiguously provided that appellant was entitled to reimbursement of the

medical benefits it paid, irrespective of whether appellee made a full recovery. Appellant argued that its right to reimbursement exists under both Ohio and federal law.

{¶ 11} The trial court granted appellee's motion for summary judgment and denied appellant's. The trial court held that the terms of the plan were ambiguous insofar as they failed to "specifically state that the participant's right to be *made whole* is superseded by the plan's right to subrogation." As such, citing *Porter v. Tabern* (Sept. 17, 1999), Champaign App. No. 98–CA–26, 1999 WL 812357, and *Blue Cross & Blue Shield Mut. of Ohio v. Hrenko* (1995), 72 Ohio St.3d 120, 647 N.E.2d 1358, syllabus, the trial court applied Ohio's "made-whole doctrine," which stands for the proposition that an insurer's "subrogated interests will not be given priority where doing so will result in less than a full recovery for the insured." See *Grine v. Payne* (Mar. 23, 2001), 6th Dist. No. WD–00–044, 2001 WL 279767. Finding that appellee had not received full compensation, the trial court held that appellant was not entitled to reimbursement of the medical benefits. It is from this judgment that appellant appeals.

{¶ 12} Appellant raises the following assignments of error:

{¶ 13} "A. The lower court erred in holding that the terms of the Plan are uncertain or ambiguous.

{¶ 14} "B. The lower court erred in holding that there is no evidence that the terms of the subrogation reimbursement agreement were made available at the time the Plan was entered into.

{¶ 15} "C. The lower court erred in holding that the Plan's subrogation interest should not be given priority because Ms. Lawson received less than full compensation."

{¶ 16} Appellant's assignments of error each concern ways in which the trial court erred in granting appellee's motion for summary judgment. To the extent they are interrelated, we will consider them together.

{¶ 17} This court notes at the outset that in reviewing a motion for summary judgment, we must apply the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).

{¶ 18} It is well settled that an insurer can have a contractual right to subrogation, also called conventional subrogation, which is based upon the contractual obligations of the parties. *Hrenko*, 72 Ohio St.3d at 121, 647 N.E.2d

1358. The focus of conventional subrogation is the agreement of the parties, which is controlled by contract principles. Id. See, also, *Ervin v. Garner* (1971), 25 Ohio St.2d 231, 240, 54 O.O.2d 361, 267 N.E.2d 769. The Ohio Supreme Court noted, in *Ervin,* that "[c]ases of contractual interpretation should not be decided on the basis of what is 'just' or equitable * * * even where a party has made a bad bargain, contracted away all his rights, and has been left in the position of doing the work while another may benefit from the work." *Ervin,* 25 Ohio St.2d at 239–240, 54 O.O.2d 361, 267 N.E.2d 769. Rather, " 'words in a policy must be given their plain and ordinary meaning, and only where a contract of insurance is ambiguous and therefore susceptible [of] more than one meaning must the policy language be liberally construed in favor of the claimant who seeks coverage.' " *Hrenko* at 122, 647 N.E.2d 1358, citing *Burris v. Grange Mut. Cos.* (1989), 46 Ohio St.3d 84, 89, 545 N.E.2d 83.

{¶ 19} In *Hrenko,* the Ohio Supreme Court held that "[p]ursuant to the terms of an insurance contract, a health insurer that has paid medical benefits to its insured and has been subrogated to the rights of its insured may recover from the insured after the insured receives full compensation by way of a settlement with the insured's uninsured motorist carrier." *Hrenko,* supra, at syllabus. The insured in *Hrenko* had been fully compensated for his injuries; however, since *Hrenko,* a trend in Ohio developed wherein courts have held that "an insurer's subrogation interests will not be given priority where doing so will result in less than full recovery to the insured." *Grine v. Payne* (Mar. 23, 2001), 6th Dist. No. WD–00–044, 2001 WL 279767. See, also, *Cent. Res. Life Ins. Co. v. Hartzell* (Nov. 30, 1995), Tuscarawas App. No. 94AP120094, 1995 WL 768553; *Moellman v. Niehaus* (Feb. 5, 1999), Hamilton App. No. C–971113, 1999 WL 49370; *Porter v. Tabern* (Sept. 17, 1999), Champaign App. No. 98–CA–26, 1999 WL 812357; *Johnson v. Progressive Ins. Co.* (Dec. 23, 1999), Lake App. No. 98–L–102, 1999 WL 1313672. This doctrine has been referred to as the "made-whole doctrine." *Huron Cty. Bd. of Commrs. v. Saunders,* 149 Ohio App.3d 67, 2002-Ohio-3974, 775 N.E.2d 892, at ¶ 19.

{¶ 20} The made-whole doctrine has even been applied where the insurer's subrogation clause stated that "[a]ll recoveries from a third party * * * must be used to reimburse [the insurer] for benefits paid" and that "[the insurer's] share of the recovery will not be reduced because the [insured] did not recover the full amount of damages claimed * * *." *Hartzell,* supra. In *Hartzell,* the Fifth Appellate District held that, by attempting to give the insurer claim-priority over the injured party's claim, the subrogation clause was "unenforceable and contrary to public policy." The court reasoned as follows:

{¶ 21} "The purpose of insurance is to protect individuals from injury by permitting them to contract with insurance carriers. The carriers calculate and

distribute the risks and liabilities and set premiums. In the case at bar, [the insurer] has accepted premiums in return for the assurance that appellants would be protected in the event they incurred medical expenses. The subrogation clause subverts this by giving [the insurer] claims priority over the injured party's claims."

{¶ 22} Appellant, however, argues that the appellate cases cited above, which apply the made-whole doctrine, fail to strike a balance between well-established rules of contract interpretation and the equitable principles embodied in the made-whole doctrine. In support of its argument, appellant cites a body of case law that applies the federal common-law make-whole doctrine to cases involving insurance plans that are governed by the Employee Retirement Income Security Act of 1974, Section 1001 et seq., Title 29, U.S.Code ("ERISA"). See, e.g., *Cunningham v. Aultcare Corp.*, Stark App. No. 2002 CA 00375, 2003-Ohio-3085, 2003 WL 21379306; *Galusha v. Pass*, 6th Dist No. L–02–1134, 2003-Ohio-1036, 2003 WL 859083; and *Stephens v. Emanhiser* (Aug. 24, 1999), Seneca App. No. 13–99–03, 1999 WL 692408. Appellant asserts that the federal make-whole doctrine strikes the necessary balance.

{¶ 23} The federal make-whole doctrine is based upon the "general equitable principle of insurance law that, absent an agreement to the contrary, an insurance company may not enforce a right to subrogation until the insured has been fully compensated for her injuries, that is, has been made whole." *Barnes v. Indep. Auto. Dealers of California* (C.A.9, 1995), 64 F.3d 1389, 1394. The application of the federal make-whole doctrine was described in *Galusha,* supra, at ¶ 37, as follows:

{¶ 24} "When the language of an ERISA plan is silent or ambiguous as to subrogation or reimbursement rights, federal common law requires that the insured be made whole before the insurer can recover. *Copeland Oaks v. Haupt* (C.A.6, 2000), 209 F.3d 811, 813, 24 EBC 1357. Nevertheless, the benefit provider can opt out of this 'default' make-whole rule by using specific and clear language in its plan that establishes both a priority to recovered funds and a right to full or partial recovery. Id. at 813–814. See, also, *Hiney Printing Co. v. Brantner* (C.A.6, 2001), 243 F.3d 956, 959."

{¶ 25} In *Community Ins. Co. v. Ohayon* (1999), 73 F.Supp.2d 862, the United States District Court for the Northern District of Ohio, Eastern Division, held that the absence of certain clear disclosures in a subrogation agreement would create ambiguity and, thereby, necessitate the application of the make-whole doctrine. The required disclosures were set forth in *Ohayon* as follows: (1) the policy certificate must "set forth any priority for payment of funds recovered from third parties" and the reimbursement provision must "disclose the extent the insurer's rights take priority over the insured's recovery where the recovery

is partial or incomplete"; (2) the reimbursement provision must "expressly override the make-whole rule"; and (3) the policy language must "mention that an insured party may have a right to retain any recovery that exceeds the amount paid to an insurer who exercises its right to subrogation or reimbursement."

{¶ 26} In applying the federal make-whole doctrine, the Sixth and Third Districts, in *Galusha* and *Stephens,* supra, determined that the following policy language was sufficient to give the insurers first priority over the insureds' rights of recovery, regardless of whether the insureds had been fully compensated for their injuries:

{¶ 27} "(1) * * * when [payment] is made by the third party, this Plan is entitled to be repaid first for any and all benefits paid for the same injury, illness or other loss for which the payment is made. * * * [T]he obligation to repay this Plan will be binding upon the Member, Eligible Dependent, beneficiary, or legal representative regardless of whether: * * * the covered individual has been paid by the third party for all losses sustained or alleged.

{¶ 28} "(2) the plan shall be subrogated * * * whether or not those monies are sufficient to make whole the Participant to whom this Plan made its payments * * *."

{¶ 29} We are not bound by the federal make-whole doctrine in this case because appellant's plan is a "government plan," established for employees of a political subdivision of a state, and, therefore, exempted from ERISA. See Sections 1002(32) and 1003(b)(1), Title 29, U.S.Code. Nevertheless, we recognize that the federal application of the make-whole doctrine strikes an effective balance between principles of contract and equity. Given the holdings by the Ohio Supreme Court in *Ervin,* which stated that contractual principles apply to subrogation agreements, and the syllabus law in *Hrenko,* which stated that a health insurer has a right to reimbursement for medical benefits paid "after the insured receives full compensation," which is an equitable principle, we find that it is necessary to establish a balance between these two principles. Accordingly, in order to give effect to both principles of contract and equity as they apply to subrogation agreements, we find that unless the terms of a subrogation agreement clearly and unambiguously provide otherwise, a health insurer's subrogation interests will not be given priority where doing so will result in less than a full recovery to the insured.

{¶ 30} The trial court held that appellant's policy was ambiguous because it failed to "specifically state that the participant's right to be *made whole* is superseded by the plan's right to subrogation." We, however, find that there is no requirement in Ohio that particular language must be used in a contract to

establish an insurer's priority; rather, so long as the policy clearly and ambiguously establishes the insurer's priority, we find that such a provision is enforceable. See *Hrenko* at 122, 647 N.E.2d 1358.

{¶ 31} In this case, the agreement states that appellant's right to be reimbursed for any amount recovered by way of settlement from a "third party, third party's insurer, or any other person" exists "irrespective of whether any such settlement or judgment may or may not provide reimbursement to [appellee] for all injuries, illnesses, or other damages (including, without limitation, pain and suffering, consequential, punitive, exemplary or other damages, whether alleged, proven in court of law or otherwise substantiated) * * *." We find that this language clearly and unambiguously states that appellant is entitled to reimbursement from any money received by appellee from a third party, third party's insurer, or any other person, regardless of whether appellee has been made whole by her recovery.

{¶ 32} Although we have explained and modified the made-whole doctrine as applied by *Huron Cty. Bd. of Commrs. v. Saunders,* 149 Ohio App.3d 67, 2002-Ohio-3974, 775 N.E.2d 892; *Grine v. Payne* (Mar. 23, 2001), 6th Dist. No. WD–00–044; *Moellman v. Niehaus* (Feb. 5, 1999), Hamilton App. No. C–971113; *Porter v. Tabern* (Sept. 17, 1999), Champaign App. No. 98–CA–26; and *Johnson v. Progressive Ins. Co.* (Dec. 23, 1999), Lake App. No. 98–L–102, we find that we are not in conflict with these cases. Specifically, we find that none of the policies in those cases contained any language regarding priority and certainly did not clearly and unambiguously state that the insurers were entitled to be reimbursed for any amount recovered from a third party, regardless of whether the amount received fully compensated the insured. However, to the extent that we find that an insurer can contractually establish, in a subrogation agreement, priority to amounts received by an insured from a third party, even where the insured has not been fully compensated for her injuries, we find that our holdings in *Saunders* and *Grine* are modified and explained.

{¶ 33} We realize that the Fifth District in *Hartzell,* supra, held that it is against public policy to allow an insurer to contractually establish priority over an insured's claim against a tortfeasor before the insured has been made whole. However, we find that *Hartzell* failed to apply well-established rules of contract interpretation or follow the holding in *Ervin,* which stated that "[c]ases of contractual interpretation should not be decided on the basis of what is 'just' or equitable." *Ervin,* 25 Ohio St.2d at 239, 54 O.O.2d 361, 267 N.E.2d 769. Accordingly, we decline to follow the holding in *Hartzell,* and, therefore, find ourselves in conflict with the Fifth Appellate District.

{¶ 34} Appellee, however, raises additional arguments in her brief, which we must also consider. First, relying on *Toledo Area Constr. Workers Health &*

*Welfare Plan v. Lewis* (N.D.Ohio 1998), appellee argues that the agreement she signed after Emily was injured is void for lack of consideration. Appellee asserts that the agreement "attempted to impose new restrictions, add new terms, or relieve the plan of its existing obligations," without providing new consideration. We disagree.

{¶ 35} The subrogation provision in the contract stated that "[a]ny payments made by this Plan for injury or illness caused by the negligent or wrongful act of any third party are made with the agreement and understanding that the covered person will reimburse the Plan for any amounts which are later recovered from the third party by way of settlement or in satisfaction of any judgment." The provision further states that "[t]he Claims Administrator will withhold payments of claims made under this Plan, to the extent that the Claims Administrator has actual knowledge of a negligent or wrongful act of a third party, until the covered person or the covered person's legal representative executes a subrogation reimbursement agreement." Accordingly, we find that unlike the policy in *Lewis,* supra, appellant was conditionally obligated to provide coverage only for injury caused by the negligent or wrongful act of a third party, after the covered person or the covered person's legal representative executed a subrogation-reimbursement agreement. Because appellant's obligation to provide coverage was conditioned on appellee's first executing a subrogation-reimbursement agreement, we find that no new consideration was required and, therefore, the signed agreement is enforceable.

{¶ 36} Second, appellee argues that appellant is not subrogated to any amount of UM coverage received by appellee. We agree. The agreement originally stated that appellant was entitled to reimbursement "for any amounts which are later recovered from any third party, third party's insurer, or any other person or insurer (including without limitation, Covered Person's own insurer) * * *." The language "or insurer (including without limitation, Covered Person's own insurer)," however, was stricken from the agreement by appellee. Thus, appellant is entitled to reimbursement only "for any amounts which are later recovered from any third party, third party's insurer, or any other person." We find that "any other person" would not include appellee's UM insurance carrier, as it is a company and not an individual as contemplated by the policy. Accordingly, we find that appellant is not entitled to any reimbursement for any amounts received by appellee from her UM carrier.

{¶ 37} Additionally, to the extent that we find that appellant is entitled to reimbursement for amounts received from the third party or the third party's insurer, we note that appellant raised an additional issue in its motion for summary judgment that requires our consideration. Specifically, appellant asserted that appellee was "not entitled to deduct attorney fees from any amount

owed the Plan based upon the clear terms of the subrogation provision, which does not provide for a reduction for attorney fees." We disagree on the basis that the subrogation provision is ambiguous in this respect.

{¶ 38} The policy states that any payments made by appellant for injury "caused by the negligent or wrongful act of any third party are made with the agreement and understanding that the covered person will reimburse the Plan for any amounts which are later recovered from the third party by way of settlement or in the satisfaction of any judgment." However, the policy then states that the amount which must be reimbursed "will be the lesser of the payments actually made by the Plan, or the amount received by the covered person from the third party." Although it appears that appellant is entitled to be reimbursed for "any amounts" recovered from a third party, the section later limits that amount to "the amount received by the covered person from the third party." We find that these phrases create an ambiguity.

{¶ 39} There are inherent expenses associated with recovering a judgment against a tortfeasor, including, but not limited to, attorney fees. Appellant's policy fails to state what party is expected to incur such expenses. Thus, in the absence of such a specification, we find that "the amount received by the covered person from the third party" could mean either the full amount paid by the third party, or it could mean the actual amount the covered person received, i.e., the amount paid by the third party less the costs of prosecuting the claim, which would include attorney fees. Accordingly, we find that appellant's policy is ambiguous in this respect and, therefore, must be construed in favor of the insured. Hence, we find that appellant's subrogation and reimbursement rights are limited to the amount received by appellee from the third party or the third party's insurer, less the costs expended in prosecuting her claim against the third party. Based on the affidavit testimony of appellee's attorney, who stated he has a one-third interest in any recovery from the tortfeasor, we find that appellee established that she received only $66,666 from the third party's insurer.

{¶ 40} Based on the foregoing, we find that appellant was entitled to summary judgment, as a matter of law, on its claim against appellee for reimbursement of medical bills paid on behalf of Emily Lawson, in the amount of $66,666. Accordingly, we find that the trial court erred in granting appellee summary judgment. Appellant's assignments of error are therefore found well taken, in part.

{¶ 41} The judgment of the Lucas County Court of Common Pleas is therefore reversed in accordance with this decision. Judgment is entered in favor of appellant, Northern Buckeye Education Council Group Health Benefits Plan, against appellee, Karen W. Lawson, in the amount of $66,666. Costs of this appeal are to be paid by appellee.

{¶ 42} Insofar as we find the holding in this case to be in conflict with *Cent. Res. Life Ins. Co. v. Hartzell* (Nov. 30, 1995), Tuscarawas App. No. 94AP120094, pursuant to Section 3(B)(4), Article IV, Ohio Constitution, this court certifies the record of the instant case to the Ohio Supreme Court for review and final determination on the following question:

{¶ 43} "Is a subrogation and reimbursement clause which attempts to give an insurer claim priority over the insured's claim against a third party or other insurer, regardless of whether the insured has received full compensation for her injuries, against public policy and unenforceable?"

Judgment reversed.

PETER M. HANDWORK, P.J., and JUDITH ANN LANZINGER, J., concur.