{¶ 70} I respectfully concur in judgment only in part, and dissent in part, with the majority's opinion.
 {¶ 71} Initially, the trial court erred when, at trial and over objection, it allowed NGS to substitute the Right of Recovery Agreement, which referenced the Ohio Health Choice Plan, with the summary of the May 1, 2001 NGS health plan (NGS American, Inc. Medical Insurance Company). The majority determined that this substitution was harmless. I disagree. The fact that there was similar language regarding the right of reimbursement in the NGS plan and in the Right of Recovery Agreement was irrelevant as the plan in effect on the date of the accident was the Ohio Health Choice Plan, not the NGS plan.
 {¶ 72} To review, NGS based its claim of breach on the Right of Recovery Agreement that was originally attached to its complaint. In discovery, when asked for a copy of the health plan referenced by the Right of Recovery Agreement, NGS provided copies of the Ohio Health Choice Plan, Nos. 000002 and 000056. This plan and the Right of Recovery Agreement were introduced at trial as Plaintiff's Exhibit 3. The Ohio Health Choice Plan was the one referenced in the Right of Recovery Agreement and the one purported to be in effect on the date of the accident. This plan indicated that True North, L.L.C. was the plan administrator and NGS was the plan supervisor.
 {¶ 73} The Right of Recovery Agreement only named the Lyden Company and the Ohio Health Choice Plan as parties. NGS was only shown as the place where the agreement was to be mailed. NGS was not referenced anywhere else in this agreement.
 {¶ 74} NGS was added as a party plaintiff by appellant on June 20, 2000. On May 29, 2001, NGS cross-claimed against appellant, naming itself as the aggrieved party.
 {¶ 75} After trial had begun, NGS was allowed to substitute, over objection, a summary of a different health plan administered by NGS American, Inc. Medical Insurance Company. This plan went into effect on May 1, 2001; however, the date of the accident was April 14, 1998. It was this latter health plan, Exhibit 12, that was now claimed to be the basis of the breach of the right of recovery contract and which the trial court and the majority found to have subrogation language similar to the Right of Recovery Agreement.
 {¶ 76} Civ.R. 10(D) requires that, in a contract action, a copy of the contract be attached to the complaint. If a party never receives leave to file a proposed amended complaint pursuant to Civ.R. 15, and has not appealed such issue, the proposed amended complaint will not properly be considered part of the record for appeal. See, e.g., Krause v. Case WesternReserve Univ. (Dec. 19. 1996), 8th Dist. No. 70526, 1996 Ohio App. LEXIS 5771, at 9-10. Thus, it would seem to be fundamental that in an action on a contract, the plaintiff is stuck with the contract attached and alleged in the complaint unless there is a proper amendment under Civ.R. 15. That was never done.
 {¶ 77} The majority does not see a problem with the health plan's submission at trial of a summary of a different health plan administered by NGS, Exhibit 12, instead of the Right of Recovery Agreement with its apparent reference to the Ohio Health Choice Plan. According to the majority, all that matters is that the language at issue was identical in both Exhibit 12 and the Right of Recovery Agreement. As stated earlier, a party cannot amend its complaint without leave of the court. The trial court admitted the health plan's Exhibit 12 over appellant's objection, and accordingly the trial court erred.
 {¶ 78} With respect to the majority's disposition of appellant's argument that NGS was not entitled to reimbursement from money received from the UM/UIM carrier, I concur in judgment only. It is well-settled that "unless the terms of a subrogation agreement clearly and unambiguously provide otherwise, a health insurer's subrogation interests will not be given priority where doing so will result in less than a full recovery to the insured." Northern Buckeye Educ. Council Group Health BenefitsPlan v. Lawson, 154 Ohio App.3d 659, 2003-Ohio-5196, at ¶ 29, motion to certify record granted (2003),100 Ohio St.3d 1543.[5] However, "[t]here is no requirement in Ohio that particular language must be used in a contract to establish an insurer's priority; rather, so long as the policy clearly and ambiguously establishes the insurer's priority, such a provision is enforceable." Id. at ¶ 30.
 {¶ 79} In Northern Buckeye, the plan's language clearly stated that the plan was entitled to reimbursement from any money received by the insured from a "third party, third party's insurer, or any other person," and regardless of whether theinsured had been made whole by the recovery. Id. at ¶ 6. The plan did not specifically state that it was entitled to money received from UM/UIM carriers. The only thing that held the reviewing court back from concluding that the plan had priority over money received from the UM carrier was that the language "other person" could not include an insurance company. Id.
 {¶ 80} In this instance, the plan's language was not as limited as that in Northern Buckeye. The relevant language stated that the plan had priority to "any payment or reimbursement from or on behalf of ay other person ororganization" made to the insured. (Emphasis added.) The plan further stated it "shall have a lien upon any payments or reimbursements received by the covered individual * * *." (Emphasis added.) Further, the plan's language indicated that the plan's right to reimbursement superseded the insured's right to be made whole. Thus, following the logic of Northern Buckeye,
the plan sub judice would clearly have priority over money received by the insured from the UM/UIM carrier, regardless of whether the insured had been made whole.
 {¶ 81} Where the insurance contract includes a right of subrogation against amounts recovered from an uninsured motorist carrier, Ohio courts will enforce that right. Blue Cross BlueShield Mut. of Ohio v. Hrenko (1995), 72 Ohio St.3d 120. Only "[w]here the health insurance contract is ambiguous as to whether subrogation may be had only against the tort-feasor and his insurer, or whether subrogation may be had against the insured's uninsured motorist carrier, the contract must be strictly construed against the drafter." Csik v. Blue Cross Blue Shieldof Ohio (1996), 109 Ohio App.3d 9, 11.
 {¶ 82} It seems in this matter that the contract language was not ambiguous. Following the logic set forth in NorthernBuckeye, the instant plan had priority over money received by the insured from the UM/UIM carrier, even though the insured had not been made whole.
 {¶ 83} For the above reasons, I concur in judgment only in part, and dissent in part, from the majority's opinion.
[5] The issue currently pending before the Supreme Court of Ohio is separate and distinct from the issues and law cited in this opinion.