NORTHERN BUCKEYE EDUCATION COUNCIL GROUP HEALTH
BENEFITS PLAN, APPELLEE, *v.* LAWSON, APPELLANT.

[Cite as *N. Buckeye Edn. Council Group Health Benefits
Plan v. Lawson,* 103 Ohio St.3d 188, 2004-Ohio-4886.]

(No. 2003–1880—Submitted June 8, 2004—Decided September 29, 2004.)

■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■

**MOYER, C.J.**

{¶ 1} The Northern Buckeye Education Council Group Health Benefits Plan ("Plan"), appellee, is a self-funded governmental[1] group health-care plan sponsored by the Northern Buckeye Education Council. The Plan provided Karen W. Lawson, appellant, and certain of her dependents with health insurance by virtue of her employment.

{¶ 2} The health-benefits contract negotiated between Lawson's employer and the Plan included a reimbursement and subrogation provision as Section 3.7 of the contract:

{¶ 3} "Any payments made by this Plan for injury or illness caused by the negligent or wrongful act of any third party are made with the agreement and understanding that the covered person will reimburse the Plan for any amounts which are later recovered from the third party by way of settlement or in satisfaction of any judgement [sic]. The amount which must be reimbursed to the Plan will be the lesser of the payments actually made by the Plan, or the amount received by the covered person from the third party. As security for the Plan's rights to reimbursement, the Plan will be subrogated to all of the covered person's rights of recovery against a third party (or the party's insurers) to the extent of any payments made by the Plan. The Claims Administrator will withhold payments of claims made under this Plan, to the extent that the Claims Administrator has actual knowledge of a negligent or wrongful act of a third party, until the covered person or the covered person's legal representative executes a subrogation reimbursement agreement."

{¶ 4} Lawson's minor daughter, Emily, was injured in an auto accident and suffered serious injuries. In accordance with Section 3.7 of the contract, the Plan refused to pay Emily's medical bills until Lawson signed a subrogation reimbursement agreement. Although initially reluctant, Lawson ultimately signed a document that provided:

{¶ 5} "I am a Covered Person under the Northern Buckeye Education Council Employee Benefits Plan ('the Plan') and have applied or will apply for benefits

---

1. The Plan asserted in the trial court that it is not subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), because it is a plan established for employees by a political subdivision of a state. Sections 1002(32) and 1003(b)(1), Title 29, U.S.Code. Lawson does not dispute this assertion, and both the trial court and the court of appeals resolved the case based solely on state law.

under the Plan. I acknowledge and agree that my right to have benefits paid from the Plan on my behalf is subject to certain terms of the Plan which provide that the Plan shall be entitled to reimbursement from third parties, the Plan shall have certain subrogation rights, and the Plan shall not pay any benefits on my behalf unless and until I execute this Reimbursement and Subrogation Agreement.

{¶ 6} "Accordingly, I agree that if benefit payments are made on my behalf under the Plan and such payments are or may have been for treatment required due to the act of any third party, I will reimburse the Plan (or Northern Buckeye Education Council, as Plan sponsor) for any amounts which are later recovered from any third party, third party's insurer, or any other person, by way of settlement or in the satisfaction of any judgment of or upon any claims arising from said act, irrespective of whether any such settlement or judgment may or may not provide reimbursement to me for all injuries, illnesses, or other damages (including, without limitation, pain and suffering, consequential, punitive, exemplary or other damages, whether alleged, proven in court of law or otherwise substantiated); that the Plan is subrogated to my rights of recovery against any third party's insurer, or any other person to the extent of any of the benefit payments made by the Plan or the amount of recovery whichever is less.

{¶ 7} "I have completed the attached Reimbursement and Subrogation Rights Information Request Form to the best of my knowledge and belief. I also acknowledge and agree that I will not take any action prejudicing or otherwise damaging the subrogation rights of the Plan and will be liable to the Plan for any losses to the Plan caused by such actions."

{¶ 8} After Lawson signed this agreement, the Plan paid medical expenses on Emily's behalf totaling $85,945.37.

{¶ 9} Lawson recovered insurance benefits of $100,000 from the tortfeasor's liability insurance and $150,000 from her own underinsured motorist coverage. Lawson refused, however, to reimburse the Plan the $85,945.37 it had paid for Emily's medical treatment, asserting that Emily had not been "made whole" by the $250,000 she had received. The Plan then filed the case now before us, demanding judgment against Lawson for $85,945.37.

{¶ 10} The trial court entered summary judgment in favor of Lawson. Citing *Newcomb v. Cincinnati Ins. Co.* (1872), 22 Ohio St. 382, 1872 WL 17, and quoting *Barnes v. Indep. Auto. Dealers Assn. of California Health & Welfare* (C.A.9, 1995), 64 F.3d 1389, 1394, it recognized the "'general equitable principle of insurance law that, absent an agreement to the contrary, an insurance company may not enforce a right to subrogation until the insured has been fully compensated for her injuries, that is, has been made whole.'" In addition, the trial court recognized that this court has held that this equitable limit on subrogation,

commonly denominated the "made whole" or "make whole" doctrine, may be overridden by a clear and unambiguous agreement between an insured and an insurer that the insurer shall have priority to any recovery from the tortfeasor. *Ervin v. Garner* (1971), 25 Ohio St.2d 231, 54 O.O.2d 361, 267 N.E.2d 769.

{¶ 11} The trial court nevertheless ruled in favor of Lawson, finding that the language employed in the agreement she signed did not specifically state that the Plan's subrogation right would take priority over the participant's right to be made whole. It contrasted the language of the agreement before it with an agreement considered in *Stephens v. Emanhiser* (Aug. 24, 1999), Seneca App. No. 13–99–03, 1999 WL 692408. That agreement specifically used the words "make whole," stating, "The Plan shall be subrogated * * * whether or not those monies are sufficient to make whole the Participant to whom or on whose behalf this Plan made its payments." The trial court concluded that the clause before it was uncertain or ambiguous, and therefore did not override the make-whole doctrine. It held that because "the recovery to the injured did not result in making her whole," the Plan was not entitled to priority pursuant to the subrogation agreement signed by Lawson.

{¶ 12} The court of appeals reversed. Citing *Ervin*, it held that subrogation rights would not be enforced before full recovery by the insured "unless the terms of a subrogation agreement clearly and unambiguously provide otherwise." 154 Ohio App.3d 659, 2003-Ohio-5196, 798 N.E.2d 667, ¶ 29. Like the trial court, the court of appeals recognized that a health insurer and a recipient of health-insurance benefits could contractually avoid application of the make-whole doctrine. In contrast to the trial court, however, it held that the language in the agreement signed by Lawson did clearly and unambiguously state that the Plan would be entitled to reimbursement regardless of whether Emily was made whole through recovery from collateral sources. Hence, it held that the Plan was entitled to summary judgment on its claim against Lawson for reimbursement of medical bills regardless of whether the Lawsons had been made whole by receipt of funds from other insurance companies.

{¶ 13} The court of appeals noted, however, that Section 3.7 provided that an insured would be required to reimburse the Plan in an amount representing "the lesser of the payments actually made by the Plan, or the amount received by the covered person from the third party." It found this language to be ambiguous because it could be interpreted in two ways: "the amount received by the covered person" might mean either the full amount paid by the third party or the net amount the insured personally received, i.e., the amount paid by the third party less the costs of prosecuting the claim, including attorney fees. 154 Ohio App.3d 659, 2003-Ohio-5196, 798 N.E.2d 667, ¶ 38–39. The court of appeals resolved this ambiguity in favor of Lawson, and deducted a one-third contingency fee claimed

by Lawson's attorney from the $100,000 received from the tortfeasor's liability insurer, thereby reducing the figure Lawson owed the Plan to $66,666. The court held that the Plan had no subrogation rights against the $150,000 from Lawson's underinsured motorist coverage because Lawson had struck from the agreement form language granting that right. Id. at ¶ 36.

{¶ 14} The court of appeals found that its judgment conflicted with that of the 5th District Court of Appeals in *Cent. Res. Life Ins. Co. v. Hartzell* (Nov. 30, 1995), Tuscarawas App. No. 94AP120094, 1995 WL 768553. It certified the following issue to us pursuant to Section 3(B)(4), Article IV, Ohio Constitution for review and final determination: "Is a subrogation and reimbursement clause which attempts to give an insurer claim priority over the insured's claim against a third party or other insurer, regardless of whether the insured has received full compensation for her injuries, against public policy and unenforceable?"

{¶ 15} We answer the certified issue in the negative. We hold that a provider of health insurance and an insured who has been injured by an act of a third party may agree prior to payment of medical benefits that the insured will reimburse the insurer for any amounts later recovered from that third party, third party's insurer, or any other person through settlement or satisfaction of judgment upon any claims arising from the third party's act. A clear and unambiguous agreement so providing is not unenforceable as against public policy, irrespective of whether the settlement or judgment provides full compensation for the insured's total damages.

{¶ 16} We have long held that principles of equitable subrogation, including the make-whole doctrine, do not override clear and unambiguous contractual provisions. Our holding therefore does not constitute a change in our precedent but rather a reaffirmance of it. See *Ervin*, 25 Ohio St.2d 231, 54 O.O.2d 361, 267 N.E.2d 769; *Peterson v. Ohio Farmers Ins. Co.* (1963), 175 Ohio St. 34, 23 O.O.2d 311, 191 N.E.2d 157; and *Newcomb v. Cincinnati Ins. Co.* (1872), 22 Ohio St. 382.

{¶ 17} More recently, in *Blue Cross & Blue Shield Mut. of Ohio v. Hrenko* (1995), 72 Ohio St.3d 120, 647 N.E.2d 1358, we recognized that "a contractual subrogation agreement [is] controlled by contract principles." Id. at 122, 647 N.E.2d 1358. We observed:

{¶ 18} "In Ohio, there are three distinct kinds of subrogation: legal, statutory, and conventional. Legal subrogation arises by operation of law and applies when one person is subrogated to certain rights of another so that the person is substituted in the place of the other and succeeds to the rights of the other person. *State v. Jones* (1980), 61 Ohio St.2d 99, 100–101, 15 O.O.3d 132, 133, 399 N.E.2d 1215, 1216–1217. Statutory subrogation is a right that exists only against a wrongdoer. Conventional subrogation is premised on the contractual obligations of the parties, either express or implied. The focus of conventional

subrogation is the agreement of the parties. Id. at 101, 15 O.O.3d at 133, 399 N.E.2d at 1217." Id. at 121, 647 N.E.2d 1358. In *Hrenko* we enforced a contractual subrogation provision whose language was "clear, relatively concise and not limited." Id. at 122, 647 N.E.2d 1358.

{¶ 19} It is true that the syllabus to *Hrenko* referred to circumstances in which full compensation had been received: "Pursuant to the terms of an insurance contract, a health insurer that has paid medical benefits to its insured and has been subrogated to the rights of its insured may recover from the insured *after the insured receives full compensation* by way of a settlement with the insured's uninsured motorist carrier." (Emphasis added.) We reject the proposition that this syllabus language should be construed as modifying our prior holdings. In *Hrenko* the insured had, in fact, been fully compensated, and reference in the syllabus to the insured receiving full compensation merely reflected that fact. That a contractual subrogation provision was enforced in *Hrenko* against a fully compensated plaintiff does not mean that the converse of the proposition is true. That is, it does not logically follow that because a fully compensated plaintiff is bound to his contractual obligations, a plaintiff who is not fully compensated is not also bound to his or her contractual obligations. No discussion in the *Hrenko* opinion supports the latter conclusion.

{¶ 20} Although some may view a subrogation provision granting priority to the insurer as unfair, courts should not rewrite contracts. As stated in *Ervin*, "Cases of contractual interpretation should not be decided on the basis of what is 'just' or equitable. This concept is applicable even where a party has made a bad bargain, contracted away all his rights, and has been left in the position of doing the work while another may benefit from the work. Where various written documents exist, it is the court's duty to interpret their meaning, and reach a decision by using the usual tools of contractual interpretation (*e.g.*, the written documents, the intent of the parties, and the acts of the parties) and not by a determination of what is fair, equitable, or just." 25 Ohio St.2d at 239–240, 54 O.O.2d 361, 267 N.E.2d 769.

{¶ 21} We have, however, applied the make-whole doctrine in cases where an insurer's subrogation is based in contract but the contract does not specify whether the insurer or the insured has priority to the recovered funds. In *James v. Michigan Mut. Ins. Co.* (1985), 18 Ohio St.3d 386, 388, 18 OBR 440, 481 N.E.2d 272, a contractual subrogation clause provided:

{¶ 22} "B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

{¶ 23} "1. Hold in trust for us the proceeds of the recovery: and

{¶ 24} "2. Reimburse us to the extent of our payment."

{¶ 25} This contractual provision clearly established a right on the part of the insurer to funds recovered by the insured. It did not, however, address the issue whether the insured was entitled to retain the recovered funds until fully compensated. Although the clause expressly gave the insurer a right of subrogation, we nevertheless recognized the "general rule of subrogation * * * that where an insured has not interfered with an insurer's subrogation rights, the insurer may neither be reimbursed for payments made to the insured nor seek setoff from the limits of its coverage *until the insured has been fully compensated* for his injuries." (Emphasis sic.) Id. at 388, 18 OBR 440, 481 N.E.2d 272. Consistent with our holding in *James,* we therefore recognize that the make-whole doctrine applies by default where a reimbursement or subrogation contract does not contain language providing otherwise.

{¶ 26} The Sixth Circuit has held that the make-whole doctrine applies by default to a subrogation or reimbursement clause in an ERISA plan. It has determined that a plan may avoid the application of the rule only by including language that is "clear in establishing *both* a priority to the funds recovered *and* a right to any full or partial recovery." (Emphasis sic.) *Copeland Oaks v. Haupt* (C.A.6, 2000), 209 F.3d 811, 813; accord *Hiney Printing Co. v. Brantner* (C.A.6, 2001), 243 F.3d 956.

{¶ 27} We adopt the *Copeland Oaks* standard applied by the Sixth Circuit. We hold that a reimbursement agreement between an insured and a health-benefits provider clearly and unambiguously avoids the make-whole doctrine if the agreement establishes both (1) that the insurer has a right to a full or partial recovery of amounts paid by it on the insured's behalf and (2) that the insurer will be accorded priority over the insured as to any funds recovered.

{¶ 28} The question remains whether the language in the Plan adopted by Lawson's employer and the language found in the reimbursement agreement signed by Lawson clearly and unambiguously provides both that the Plan has a right to reimbursement and that the Plan's interest has priority over Lawson's right to keep settlement amounts until she is fully compensated.

{¶ 29} The reimbursement agreement in the case at bar satisfies both prongs of the standard we establish today. In consideration of the Plan's payment of Emily's medical bills, Lawson agreed that if she received funds in settlement or satisfaction of judgment, the Plan would have a right to a full or partial recovery of the amounts paid by it on the insured's behalf ("I acknowledge and agree that my right to have benefits paid from the Plan on my behalf is subject to certain terms of the Plan which provide that the Plan shall be entitled to reimbursement * * *"). It further clearly established that the Plan's right to reimbursement would take priority over Lawson's right to the funds ("I will reimburse the Plan * * * for any amounts which are later recovered * * * irrespective of whether

any such settlement or judgment may or may not provide reimbursement to me for all [my damages]").

{¶ 30} The court of appeals correctly held that the Plan is entitled to summary judgment on its claims for reimbursement of medical bills it paid on Emily's behalf. We express no opinion regarding the court of appeals' insulation of the underinsured motorist benefits from subrogation or its deduction of the contingency fee claimed by Lawson's attorney in connection with recovery of funds from other sources, as the Plan did not cross-appeal on those issues.

Judgment affirmed.

LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

RESNICK, F.E. SWEENEY and PFEIFER, JJ., dissent.

---

**PFEIFER, J., dissenting.**

{¶ 31} I would answer the certified question in the affirmative, relying on *James v. Michigan Mut. Ins. Co.* (1985), 18 Ohio St.3d 386, 18 OBR 440, 481 N.E.2d 272. In *James,* this court stated, "Generally, where an insured has not interfered with an insurer's subrogation rights, the insurer may neither be reimbursed for payments made to the insured nor seek setoff from the limits of its coverage until the insured has been fully compensated for his injuries. (*Newcomb v. Cincinnati Ins. Co.* [1872], 22 Ohio St. 382, followed.)" Id. at paragraph one of the syllabus. I would reaffirm the "make whole" doctrine; I see no reason to abandon or limit a legal precedent that has been protecting injured Ohioans for over 125 years.

{¶ 32} I am also concerned that the majority leaves open the question of whether an insurance company can be subrogated for the gross amount of a recovery. For example, if medical expenses were $40,000 and a $51,000 settlement netted $34,000 for the injured person, allowing subrogation of the gross amount would enable the insurance company to collect $6,000 more than the injured party received in settlement. I would answer that question now: an insurance company should not be able to exact more in subrogation than its insured receives net of costs associated with a lawsuit or settlement. To rule otherwise would enable insurance companies to reach into their insureds' pockets. I dissent.

RESNICK and F.E. SWEENEY, JJ., concur in the foregoing dissenting opinion.

---

Arthur, O'Neil, Mertz & Michel Co., L.P.A., Joseph W. O'Neil, Daniel R. Michel and Jennifer N. Brown, for appellant.

Marshall & Melhorn, L.L.C., Jennifer J. Dawson and Michael A. Gonzalez, for appellee.

Clark, Perdue, Roberts & Scott and Douglas S. Roberts, urging reversal for amicus curiae Ohio Academy of Trial Lawyers.

Cloppert, Latanick, Sauter & Washburn, Robert L. Washburn and Rory P. Callahan, urging reversal for amicus curiae Ohio Education Association.

Kreiner & Peters Co., L.P.A., Daran P. Kiefer, Helen A. Thompson and Ted M. Traut, urging affirmance for amici curiae Golden Rule Insurance Company, U.S. Humana Health Plan of Ohio, Inc., Medical Mutual of Ohio, QualChoice Health Plan, Inc., and the National Association of Subrogation Professionals.