Raymond PREZE, Plaintiff–Appellant,

v.

BOARD OF TRUSTEES, PIPEFITTERS WELFARE FUND LOCAL 597, a voluntary unincorporated association, Defendant–Appellee.

No. 92–1791.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 7, 1993.

Decided Sept. 22, 1993.

Paul G. Krentz (argued), Patrick M. Kinnally, Murphy, Hupp, Foote, Mielke & Kinnally, Aurora, IL, for plaintiff-appellant.

Collins P. Whitfield, Janet L. Adams (argued), McCarthy & Associates, Chicago, IL, for defendant-appellee.

Before CUDAHY, COFFEY and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Raymond Preze has sued the Board of Trustees of the Pipefitters Welfare Fund, Local 597 (the "Fund") to recover past and future medical expenses stemming from injuries his daughter Kristen sustained when she was struck by an automobile. The Fund maintains that it is not liable for those expenses because, although Preze and his dependents are eligible for medical benefits under the Fund's Employee Benefit Plan (the "Plan"), Preze has not complied with the Plan's subrogation provision. The district court denied Preze's summary judgment motion in a memorandum opinion on February 24, 1992, and orally granted the Fund's summary judgment motion on March 10, 1992. Preze appeals that decision, and for the following reasons, we affirm.

## I. BACKGROUND [1]

Preze's 8–year–old daughter Kristen was struck by an automobile on December 17, 1990. Theresa Preze, as Kristen's mother and next friend, filed an action in state court against the driver, and the suit settled after the driver's insurer agreed to pay Kristen the full $50,000 limit of its policy.[2] That sum was deposited in a bank account and is accessible only by court order until Kristen reaches the age of majority on February 27, 2000. Thus, barring judicial intervention, Preze himself has no access to the settlement proceeds. When this suit was filed, Preze had incurred $30,444.18 in medical expenses related to Kristen's accident.

Preze is a member of the Fund, which provides welfare benefits to eligible employees and their dependents in accordance with the Plan. The Plan is an "employee welfare benefit plan" within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1). Both Preze and Kristen were eligible for health benefits under the Plan in December 1990.

Despite their eligibility, the Fund refused to reimburse Preze for Kristen's medical expenses because he had failed to comply with the requirements of the Plan's Article XI, which is entitled "Subrogation" and provides:

Section 1.

In the event that an eligible Employee or an eligible Employee's Dependent incurs a claim in an accident for which a third party is or may be legally responsible, no benefits will be paid on such claim unless the eligible Employee or eligible Employee's Dependent executes a written subrogation agreement in a form satisfactory to the trustees agreeing to repay the Trust Fund the amount of benefits paid on account of such accidental injury. The Trustees shall not, however, be entitled to receive reimbursement in excess of the amount which the eligible Employee or eligible Employee's Dependent receives from such third party.

Section 2.

In the event the repayment described in Section 1 is not made, the Trustees have the right to withhold any future benefits to which the eligible Employee or the eligible Employee's Dependents would otherwise be entitled to receive under the Plan until the amount which should have been repaid under Section 1 has been recovered.

Section 3.

In the event that the Employee provides proof satisfactory to the Trustees that he has not received and is not likely to receive any recovery from a third party, the covered expenses shall be paid in accordance with the Plan.

The Fund maintains that it is not liable for Kristen's medical expenses because neither Preze nor Kristen have executed a subrogation agreement as required by Section 1. Preze argues that Section 1 does not apply to minor dependents because they lack the capacity to execute binding agreements. He also contends that, regardless of Section 1, the Fund must reimburse him pursuant to

---

**1.** The following factual summary derives from the "Agreed Statement of Facts" that the parties jointly filed in the district court. (A. 40–43.)

**2.** Kristen is also pursuing an underinsured motorist claim, which had not yet been resolved when this suit was filed.

Section 3—which refers to employees but not their dependents—because *he* has not and will not recover from any third party.[3]

■ We review de novo the district court's grant of summary judgment. *Phillips v. Lincoln Nat. Life Ins. Co.*, 978 F.2d 302, 307 (7th Cir.1992). Here, no facts are in dispute, and we interpret the Plan as a matter of law. *Metalex Corp. v. Uniden Corp. of Am.*, 863 F.2d 1331, 1333 (7th Cir.1988). Our interpretation of the Plan is guided by the federal common law rules of contract interpretation. *Phillips*, 978 F.2d at 307; *Hammond v. Fidelity and Guar. Life Ins. Co.*, 965 F.2d 428, 430 (7th Cir.1992); *Senkier v. Hartford Life & Accident Ins. Co.*, 948 F.2d 1050, 1051 (7th Cir.1991).

## II. ANALYSIS

■ In order to qualify for benefits, Section 1 requires an employee or an employee's dependent who is injured by a third party to "execute[ ] a written subrogation agreement in a form satisfactory to the trustees," promising to relinquish third-party payments to the Fund. Preze argues that the provision applies only to employees and their adult dependents, because minor dependents lack the capacity to execute binding agreements. We disagree. Certainly the Plan drafters must have considered that employees might have minor dependents. That being so, we must also assume that Section 1 contemplates a legally binding agreement, such as one signed by a minor dependent's legal representative. Indeed, the section requires that the agreement be "in a form satisfactory

to the trustees," who presumably would insist at a minimum that the agreement be valid and enforceable.[4] Because no satisfactory subrogation agreement has been executed on Kristen's behalf, Section 1 unambiguously disqualifies her from receiving benefits.[5]

■ Preze also argues that he is entitled to benefits pursuant to Section 3, which states that if an employee "provides proof ... that he has not received and is not likely to receive any recovery from a third party, the covered expenses shall be paid in accordance with the plan." Preze contends that because he has not received any third party payments, and because the section does not mention dependents, his expenses should be covered regardless of whether a subrogation agreement has been executed. But we must read the article as an integrated whole, giving effect if possible to all of its provisions. *Ryan v. Chromalloy Am. Corp.*, 877 F.2d 598, 604 (7th Cir.1989). Section 3 is the last of three sections that together comprise the subrogation article, and we must read it in the context of the sections that precede it. When the three sections are read together, it is clear that Sections 2 and 3 are meant only to modify the subrogation requirement articulated in Section 1—that is, Sections 2 and 3 both rest on the premise that the employee or his dependent has complied with Section 1. Not having satisfied that requirement, Kristen does not qualify for benefits under the Plan, and Section 3 does not apply.

## III. CONCLUSION

Section 1 of the subrogation article provides that when an employee's dependent is

---

**3.** Preze also argued below that the Plan's subrogation requirement was prohibited under Illinois law. Citing *FMC Corp. v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), the district court held that Illinois law on that issue is preempted by ERISA. Preze has not challenged that holding on appeal.

**4.** In fact, the Trustees were not satisfied when Preze (in an apparent attempt to illustrate his point) submitted a subrogation agreement signed by Kristen after the district court had denied his summary judgment motion. (A. 59.)

**5.** Preze also adverts to a "Subrogation Agreement submitted by Pipefitters" and argues that it is inconsistent with the subrogation article and unenforceable for that reason. (Preze Brief at

3.) Because no subrogation agreement has been executed here, the contents of such an agreement are irrelevant. For the same reason, this case is distinguishable from that cited by Preze—*Wahl v. Northern Telecom Inc.*, 726 F.Supp. 235 (E.D.Wis.1989)—which considers the question of whether a subrogation agreement executed by a parent is enforceable against a minor child. The issue here is not whether the Fund has any enforceable subrogation rights in Kristen's recovery; it clearly does not in the absence of a subrogation agreement. Instead, the issue is whether Preze and Kristen have complied with the Plan's subrogation article, which requires execution of such an agreement, so that Kristen might qualify for benefits.

injured by a third party, the dependent does not qualify for benefits unless she executes a subrogation agreement in a form that satisfies the Plan trustees. No such agreement has been executed here, and Kristen does not qualify for benefits. The fact that Preze himself will not be reimbursed does not in any way undermine the Section 1 requirement. The judgment of the district court is affirmed.[6]

**6.** The Fund has requested that Fed.R.App.P. 38 sanctions be imposed against Preze. Rule 38 sanctions are appropriate "(1) when 'the appeal is frivolous, that is, [when] the result is obvious or the appellant's argument is wholly without merit,' and (2) when 'there is some evidence of bad faith.'" *Koffski v. Village of North Barring-* *ton,* 988 F.2d 41, 45 n. 8 (7th Cir.1993) (quoting *Rodgers v. Wood,* 910 F.2d 444, 449 (7th Cir. 1990)). Although Preze's position arguably lacks merit, the Fund has presented no evidence that he pursued the appeal in bad faith. Rule 38 sanctions therefore are not warranted and will not be imposed.