(Slip Opinion) OCTOBER TERM, 2012 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## US AIRWAYS, INC., IN ITS CAPACITY AS FIDUCIARY AND PLAN ADMINISTRATOR OF THE US AIRWAYS, INC. EMPLOYEE BENEFITS PLAN *v.* MCCUTCHEN ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 11–1285.  Argued November 27, 2012—Decided April 16, 2013

The health benefits plan established by petitioner US Airways paid $66,866 in medical expenses for injuries suffered by respondent McCutchen, a US Airways employee, in a car accident caused by a third party.  The plan entitled US Airways to reimbursement if McCutchen later recovered money from the third party.  McCutchen's attorneys secured $110,000 in payments, and McCutchen received $66,000 after deducting the lawyers' 40% contingency fee.  US Airways demanded reimbursement of the full $66,866 it had paid.  When McCutchen did not comply, US Airways filed suit under §502(a)(3) of the Employee Retirement Income Security Act of 1974 (ERISA), which authorizes health-plan administrators to bring a civil action "to obtain . . . appropriate equitable relief . . . to enforce . . . the terms of the plan."  McCutchen raised two defenses to US Airways' request for an equitable lien on the $66,866 it demanded: that, absent over-recovery on his part, US Airways' right to reimbursement did not kick in; and that US Airways had to contribute its fair share to the costs he incurred to get his recovery, so any reimbursement had to be reduced by 40%, to cover the contingency fee.  Rejecting both arguments, the District Court granted summary judgment to US Airways.  The Third Circuit vacated.  Reasoning that traditional "equitable doctrines and defenses" applied to §502(a)(3) suits, it held that the principle of unjust enrichment overrode US Airways' reimbursement clause because the clause would leave McCutchen with less than full payment for his medical bills and would give US Airways a windfall.

Syllabus

*Held*:

1. In a §502(a)(3) action based on an equitable lien by agreement—like this one—the ERISA plan's terms govern. Neither general unjust enrichment principles nor specific doctrines reflecting those principles—such as the double-recovery or common-fund rules invoked by McCutchen—can override the applicable contract. Pp. 5–11.

(a) Section 502(a)(3) authorizes the kinds of relief "typically available in equity" before the merger of law and equity. *Mertens* v. *Hewitt Associates*, 508 U. S. 248, 256. In *Sereboff* v. *Mid Atlantic Medical Services, Inc.*, 547 U. S. 356, the Court permitted a health-plan administrator to bring a suit just like this one. The administrator's claim to enforce its reimbursement clause, the Court explained, was the modern-day equivalent of an action in equity to enforce a contract-based lien—called an "equitable lien 'by agreement.'" *Id.,* at 364–365. Accordingly, the administrator could use §502(a)(3) to obtain funds that its beneficiaries had promised to turn over. The parties agree that US Airways can do the same here. Pp. 5–6.

(b) *Sereboff*'s logic dooms McCutchen's argument that two equitable doctrines meant to prevent unjust enrichment—the double-recovery rule and common-fund doctrine—can override the terms of an ERISA plan in such a suit. As in *Sereboff,* US Airways is seeking to enforce the modern-day equivalent of an equitable lien by agreement. Such a lien both arises from and serves to carry out a contract's provisions. See 547 U. S., at 363–364. Thus, enforcing the lien means holding the parties to their mutual promises and declining to apply rules—even if they would be "equitable" absent a contract—at odds with the parties' expressed commitments. The Court has found nothing to the contrary in the historic practice of equity courts. McCutchen identifies a slew of cases in which courts applied the equitable doctrines invoked here, but none in which they did so to override a clear contract that provided otherwise. This result comports with ERISA's focus on what a plan provides: §502(a)(3) does not "authorize 'appropriate equitable relief' *at large*," *Mertens*, 508 U. S., at 253, but countenances only such relief as will enforce "the terms of the plan" or the statute. Pp. 6–11.

2. While McCutchen's equitable rules cannot trump a reimbursement provision, they may aid in properly construing it. US Airways' plan is silent on the allocation of attorney's fees, and the common-fund doctrine provides the appropriate default rule to fill that gap. Pp. 12–16.

(a) Ordinary contract interpretation principles support this conclusion. Courts construe ERISA plans, as they do other contracts, by "looking to the terms of the plan" as well as to "other manifestations of the parties' intent." *Firestone Tire & Rubber Co.* v. *Bruch*, 489

U. S. 101, 113. Where the terms of a plan leave gaps, courts must "look outside the plan's written language" to decide the agreement's meaning, *CIGNA Corp.* v. *Amara*, 563 U. S. \_\_\_, \_\_\_, and they properly take account of the doctrines that typically or traditionally have governed a given situation when no agreement states otherwise. Pp. 12–13.

(b) US Airways' reimbursement provision precludes looking to the double-recovery rule in this manner because it provides an allocation formula that expressly contradicts the equitable rule. By contrast, the plan says nothing specific about how to pay for the costs of recovery. Given that contractual gap, the common-fund doctrine provides the best indication of the parties' intent. This Court's cases make clear that the doctrine would govern here in the absence of a contrary agreement. See, *e.g., Boeing Co.* v. *Van Gemert*, 444 U. S. 472, 478. Because a party would not typically expect or intend a plan saying nothing about attorney's fees to abrogate so strong and uniform a background rule, a court should be loath to read the plan in that way. The common-fund rule's rationale reinforces this conclusion: Without the rule, the insurer can free ride on the beneficiary's efforts, and the beneficiary, as in this case, may be made worse off for having pursued a third party. A contract should not be read to produce these strange results unless it specifically provides as much. Pp. 13–16.

663 F. 3d 671, vacated and remanded.

KAGAN, J., delivered the opinion of the Court, in which KENNEDY, GINSBURG, BREYER, and SOTOMAYOR, JJ., joined. SCALIA, J., filed a dissenting opinion, in which ROBERTS, C. J., and THOMAS and ALITO, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 11–1285

US AIRWAYS, INC., IN ITS CAPACITY AS FIDUCIARY AND
PLAN ADMINISTRATOR OF THE US AIRWAYS, INC.
EMPLOYEE BENEFITS PLAN, PETITIONER
*v.* JAMES E. MCCUTCHEN ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

[April 16, 2013]

JUSTICE KAGAN delivered the opinion of the Court.

Respondent James McCutchen participated in a health
benefits plan that his employer, petitioner US Airways,
established under the Employee Retirement Income
Security Act of 1974 (ERISA), 29 U. S. C. §1001 *et seq.*
That plan obliged US Airways to pay any medical ex-
penses McCutchen incurred as a result of a third party's
actions—for example, another person's negligent driving. The
plan in turn entitled US Airways to reimbursement if
McCutchen later recovered money from the third party.

This Court has held that a health-plan administrator
like US Airways may enforce such a reimbursement provi-
sion by filing suit under §502(a)(3) of ERISA, 88 Stat. 891,
29 U. S. C. §1132(a)(3). See *Sereboff* v. *Mid Atlantic Medi-
cal Services, Inc.*, 547 U. S. 356 (2006). That section au-
thorizes a civil action "to obtain . . . appropriate equitable
relief . . . to enforce . . . the terms of the plan." We here
consider whether in that kind of suit, a plan participant
like McCutchen may raise certain equitable defenses

deriving from principles of unjust enrichment. In particular, we address one equitable doctrine limiting reimbursement to the amount of an insured's "double recovery" and another requiring the party seeking reimbursement to pay a share of the attorney's fees incurred in securing funds from the third party. We hold that neither of those equitable rules can override the clear terms of a plan. But we explain that the latter, usually called the common-fund doctrine, plays a role in interpreting US Airways' plan because the plan is silent about allocating the costs of recovery.

I

In January 2007, McCutchen suffered serious injuries when another driver lost control of her car and collided with McCutchen's. At the time, McCutchen was an employee of US Airways and a participant in its self-funded health plan. The plan paid $66,866 in medical expenses arising from the accident on McCutchen's behalf.

McCutchen retained attorneys, in exchange for a 40% contingency fee, to seek recovery of all his accident-related damages, estimated to exceed $1 million. The attorneys sued the driver responsible for the crash, but settled for only $10,000 because she had limited insurance coverage and the accident had killed or seriously injured three other people. Counsel also secured a payment from McCutchen's own automobile insurer of $100,000, the maximum amount available under his policy. McCutchen thus received $110,000—and after deducting $44,000 for the lawyer's fee, $66,000.

On learning of McCutchen's recovery, US Airways demanded reimbursement of the $66,866 it had paid in medical expenses. In support of that claim, US Airways relied on the following statement in its summary plan description:

"If [US Airways] pays benefits for any claim you incur

as the result of negligence, willful misconduct, or other actions of a third party, . . . [y]ou will be required to reimburse [US Airways] for amounts paid for claims out of any monies recovered from [the] third party, including, but not limited to, your own insurance company as the result of judgment, settlement, or otherwise." App. 20.[1]

McCutchen denied that US Airways was entitled to any reimbursement, but his attorneys placed $41,500 in an escrow account pending resolution of the dispute. That amount represented US Airways' full claim minus a proportionate share of the promised attorney's fees.

US Airways then filed this action under §502(a)(3), seeking "appropriate equitable relief" to enforce the plan's reimbursement provision. The suit requested an equitable lien on $66,866—the $41,500 in the escrow account and $25,366 more in McCutchen's possession. McCutchen countered by raising two defenses relevant here. First, he maintained that US Airways could not receive the relief it sought because he had recovered only a small portion of his total damages; absent over-recovery on his part, US Airways' right to reimbursement did not kick in. Second, he contended that US Airways at least had to contribute its fair share to the costs he incurred to get his recovery;

─────────

[1] We have made clear that the statements in a summary plan description "communicat[e] with beneficiaries *about* the plan, but . . . do not themselves constitute the *terms* of the plan." *CIGNA Corp.* v. *Amara,* 563 U. S. \_\_\_, \_\_\_ (2011) (slip op., at 15). Nonetheless, the parties litigated this case, and both lower courts decided it, based solely on the language quoted above. See 663 F. 3d 671, 673 (CA3 2011); App. to Pet. for Cert. 26a. Only in this Court, in response to a request from the Solicitor General, did the plan itself come to light. See Letter from Matthew W. H. Wessler to William K. Suter, Clerk of Court (Nov. 19, 2012) (available in Clerk of Court's case file). That is too late to affect what happens here: Because everyone in this case has treated the language from the summary description as though it came from the plan, we do so as well.

any reimbursement therefore had to be marked down by 40%, to cover the promised contingency fee. The District Court rejected both arguments, granting summary judgment to US Airways on the ground that the plan "clear[ly] and unambiguous[ly]" provided for full reimbursement of the medical expenses paid. App. to Pet. for Cert. 30a; see *id.,* at 32a.

The Court of Appeals for the Third Circuit vacated the District Court's order. The Third Circuit reasoned that in a suit for "appropriate equitable relief" under §502(a)(3), a court must apply any "equitable doctrines and defenses" that traditionally limited the relief requested. 663 F. 3d 671, 676 (CA3 2011). And here, the court continued, "'the principle of unjust enrichment'" should "'serve to limit the effectiveness'" of the plan's reimbursement provision. See *id.,* at 677 (quoting 4 G. Palmer, Law of Restitution §23.18, p. 472–473 (1978)). Full reimbursement, the Third Circuit thought, would "leav[e] [McCutchen] with less than full payment" for his medical bills; at the same time, it would provide a "windfall" to US Airways given its failure to "contribute to the cost of obtaining the third-party recovery." 663 F. 3d, at 679. The Third Circuit then instructed the District Court to determine what amount, shy of the entire $66,866, would qualify as "appropriate equitable relief." *Ibid.*

We granted certiorari, 567 U. S. ___ (2012), to resolve a circuit split on whether equitable defenses can so override an ERISA plan's reimbursement provision.[2] We now

---

[2] Compare 663 F. 3d 671, 673 (CA3 2011) (case below) (holding that equitable doctrines can trump a plan's terms); *CGI Technologies & Solutions Inc.* v. *Rose*, 683 F. 3d 1113, 1124 (CA9 2012) (same), with *Zurich Am. Ins. Co.* v. *O'Hara*, 604 F. 3d 1232, 1237 (CA11 2010) (holding that they cannot do so); *Administrative Comm. of Wal-Mart Stores, Inc.* v. *Shank*, 500 F. 3d 834, 838 (CA8 2007) (same); *Moore* v. *CapitalCare, Inc.*, 461 F. 3d 1, 9–10 and n. 10 (CADC 2006) (same); *Bombadier Aerospace Employee Welfare Benefits Plan* v. *Ferror, Poirot,*

vacate the Third Circuit's decision.

## II

A health-plan administrator like US Airways may bring suit under §502(a)(3) for "appropriate equitable relief . . . to enforce . . . the terms of the plan."[3]  That provision, we have held, authorizes the kinds of relief "typically available in equity" in the days of "the divided bench," before law and equity merged.  *Mertens* v. *Hewitt Associates*, 508 U. S. 248, 256 (1993) (emphasis deleted).

In *Sereboff* v. *Mid Atlantic Medical Services*, we allowed a health-plan administrator to bring a suit just like this one under §502(a)(3).  Mid Atlantic had paid medical expenses for the Sereboffs after they were injured in a car crash.  When they settled a tort suit against the other driver, Mid Atlantic claimed a share of the proceeds, invoking the plan's reimbursement clause.  We held that Mid Atlantic's action sought "equitable relief," as §502(a)(3) requires.  See 547 U. S., at 369.  The "nature of the recovery" requested was equitable because Mid Atlantic claimed "specifically identifiable funds" within the Sereboffs' control—that is, a portion of the settlement they had gotten.  *Id.*, at 362–363 (internal quotation marks omitted).  And the "basis for [the] claim" was equitable too, because Mid Atlantic relied on "'the familiar rul[e] of equity that a contract to convey a specific object'" not yet acquired "'create[s] a lien'" on that object as soon as "'the contractor . . . gets a title to the thing.'"  *Id.,* at 363–364

————————

*& Wansbrough*, 354 F. 3d 348, 362 (CA5 2003) (same); *Administrative Comm. of Wal-Mart Stores, Inc.* v. *Varco*, 338 F. 3d 680, 692 (CA7 2003) (same).

[3] Sans ellipses, §502(a)(3) provides that a plan administrator may bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U. S. C. §1132(a)(3).

(quoting *Barnes* v. *Alexander*, 232 U. S. 117, 121 (1914)). Mid Atlantic's claim for reimbursement, we determined, was the modern-day equivalent of an action in equity to enforce such a contract-based lien—called an "equitable lien by agreement." 547 U. S., at 364–365 (internal quotation marks omitted). Accordingly, Mid Atlantic could bring an action under §502(a)(3) seeking the funds that its beneficiaries had promised to turn over. And here, as all parties agree, US Airways can do the same thing.

The question in this case concerns the role that equitable defenses alleging unjust enrichment can play in such a suit. As earlier noted, the Third Circuit held that "the principle of unjust enrichment" overrides US Airways' reimbursement clause if and when they come into conflict. 663 F. 3d, at 677. McCutchen offers a more refined version of that view, alleging that two specific equitable doctrines meant to "prevent unjust enrichment" defeat the reimbursement provision. Brief for Respondents i. First, he contends that in equity, an insurer in US Airways' position could recoup no more than an insured's "double recovery"—the amount the insured has received from a third party to compensate for the same loss the insurance covered. That rule would limit US Airways' reimbursement to the share of McCutchen's settlements paying for medical expenses; McCutchen would keep the rest (*e.g.,* damages for loss of future earnings or pain and suffering), even though the plan gives US Airways first claim on the whole third-party recovery. Second, McCutchen claims that in equity the common-fund doctrine would have operated to reduce any award to US Airways. Under that rule, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co.* v. *Van Gemert*, 444 U. S. 472, 478 (1980). McCutchen urges that this doctrine, which is designed to prevent freeloading, enables him to pass on a

share of his lawyer's fees to US Airways, no matter what the plan provides.[4]

We rejected a similar claim in *Sereboff*, though without altogether foreclosing McCutchen's position. The Sereboffs argued, among other things, that the lower courts erred in enforcing Mid Atlantic's reimbursement clause "without imposing various limitations" that would "apply to truly equitable relief grounded in principles of subrogation."[5] 547 U. S., at 368 (internal quotation marks omitted). In particular, the Sereboffs contended that a variant of the double-recovery rule, called the make-whole doctrine, trumped the plan's terms. We rebuffed that argument, explaining that the Sereboffs were improperly mixing and matching rules from different equitable boxes. The Sereboffs asserted a "parcel of equitable defenses" available when an out-of-pocket insurer brought a "free-standing action for equitable subrogation," not founded on a contract, to succeed to an insured's judgment against a third party. *Ibid.* But Mid Atlantic's reimbursement

------

[4] Both our prior cases and secondary sources confirm McCutchen's characterization of the common-fund and double-recovery rules as deriving primarily from principles of unjust enrichment. See *Boeing*, 444 U. S., at 478 ("The [common-fund] doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched"); *Mills* v. *Electric Auto-Lite Co.*, 396 U. S. 375, 392 (1970) (similar); 1 D. Dobbs, Law of Remedies §3.10(2), p. 395 (2d ed. 1993) (hereinafter Dobbs) (similar); 4 G. Palmer, Law of Restitution §23.16(b), p. 444 ("[T]he injured person is unjustly enriched" only when he has received "in excess of full compensation" from two sources "for the same loss"); 16 G. Couch, Cyclopedia of Insurance Law §61:18 (2d ed. 1983) (similar); 8B J. Appleman & J. Appleman, Insurance Law and Practice §4941, p. 11 (Cum. Supp. 2012) (hereinafter Appleman) (similar).

[5] "Subrogation simply means substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's rights against" a third party. 1 Dobbs §4.3(4), at 604; see 8B Appleman §4941, at 11 ("'Subrogation' involves the substitution of the insurer . . . to the rights of the insured").

claim was "considered equitable," we replied, because it sought to enforce a "lien based on agreement"—*not* a lien imposed independent of contract by virtue of equitable subrogation.[6] *Ibid.* (internal quotation marks omitted). In light of that fact, we viewed the Sereboffs' equitable defenses—which again, closely resemble McCutchen's—as "beside the point." *Ibid.* And yet, we left a narrow opening for future litigants in the Sereboffs' position to make a like claim. In a footnote, we observed that the Sereboffs had forfeited a "distinct assertion" that the contract-based relief Mid Atlantic requested, although "equitable," was not "appropriate" under §502(a)(3) because "it contravened principles like the make-whole doctrine." *Id.*, at 368–369 n. 2. Enter McCutchen, to make that basic argument.

In the end, however, *Sereboff*'s logic dooms McCutchen's effort. US Airways, like Mid Atlantic, is seeking to enforce the modern-day equivalent of an "equitable lien by agreement." And that kind of lien—as its name announces—both arises from and serves to carry out a contract's provisions. See *id.*, at 363–364; 4 S. Symons, Pomeroy's Equity Jurisprudence §1234, p. 695 (5th ed. 1941). So enforcing the lien means holding the parties to their mutual promises. See, *e.g., Barnes*, 232 U. S., at 121; *Walker* v. *Brown*, 165 U. S. 654, 664 (1897). Conversely, it means declining to apply rules—even if they would be "equitable" in a contract's absence—at odds with the parties' expressed commitments. McCutchen therefore cannot rely on theo-

_____

[6]The *Sereboff* Court's analysis concerned only subrogation actions based on equitable principles independent of any agreement. A subrogation action may also be founded on a contract incorporating those principles. See 1 Dobbs §4.3(4), at 604. US Airways suggested at oral argument that McCutchen's case would "ge[t] a lot stronger" if the plan here spoke only of subrogation, without separately granting a right of reimbursement. Tr. of Oral Arg. 18. We need not consider that question because US Airways seeks to enforce a reimbursement provision, of the same kind we considered in *Sereboff*.

ries of unjust enrichment to defeat US Airways' appeal to the plan's clear terms. Those principles, as we said in *Sereboff*, are "beside the point" when parties demand what they bargained for in a valid agreement. See Restatement (Third) of Restitution and Unjust Enrichment §2(2), p. 15 (2010) ("A valid contract defines the obligations of the parties as to matters within its scope, displacing to that extent any inquiry into unjust enrichment"). In those circumstances, hewing to the parties' exchange yields "appropriate" as well as "equitable" relief.

We have found nothing to the contrary in the historic practice of equity courts. McCutchen offers us a slew of cases in which those courts applied the double-recovery or common-fund rule to limit insurers' efforts to recoup funds from their beneficiaries' tort judgments. See Brief for Respondents 21–25. But his citations are not on point. In some of McCutchen's cases, courts apparently applied equitable doctrines in the absence of any relevant contract provision. See, *e.g., Washtenaw Mut. Fire Ins. Co.* v. *Budd*, 208 Mich. 483, 486–487, 175 N. W. 231, 232 (1919); *Fire Assn. of Philadelphia* v. *Wells*, 84 N. J. Eq. 484, 487, 94 A. 619, 621 (1915). In others, courts found those rules to comport with the applicable contract term. For example, in *Svea Assurance Co.* v. *Packham*, 92 Md. 464, 48 A. 359 (1901)—the case McCutchen calls his best, see Tr. of Oral Arg. 47–48—the court viewed the double-recovery rule as according with "the intention" of the contracting parties; "[b]road as [the] language is," the court explained, the agreement "cannot be construed to" give the insurer any greater recovery. 92 Md., at 478, 48 A., at 362; see also *Knaffl* v. *Knoxville Banking & Trust Co.*, 133 Tenn. 655, 661, 182 S. W. 232, 233 (1916); *Camden Fire Ins. Assn.* v. *Prezioso*, 93 N. J. Eq. 318, 319–320, 116 A. 694, 694 (Ch. Div. 1922). But in none of these cases—nor in any other we can find—did an equity court apply the double-recovery or common-fund rule to override a plain

contract term.  That is, in none did an equity court do
what McCutchen asks of us.

Nevertheless, the United States, appearing as *amicus
curiae*, claims that the common-fund rule has a special
capacity to trump a conflicting contract.  The Government
begins its brief foursquare with our (and *Sereboff*'s) analy-
sis: In a suit like this one, to enforce an equitable lien by
agreement, "the agreement, not general restitutionary
principles of unjust enrichment, provides the measure of
relief due."  Brief for United States 6.  Because that is so,
the Government (naturally enough) concludes, McCutchen
cannot invoke the double-recovery rule to defeat the plan.
But then the Government takes an unexpected turn.
"When it comes to the costs incurred" by a beneficiary to
obtain money from a third party, "the terms of the plan do
not control."  *Id.,* at 21.  An equity court, the Government
contends, has "inherent authority" to apportion litigation
costs in accord with the "longstanding equitable common-
fund doctrine," even if that conflicts with the parties'
contract.  *Id.,* at 22.

But if the agreement governs, the agreement governs:
The reasons we have given (and the Government mostly ac-
cepts) for looking to the contract's terms do not permit an
attorney's-fees exception.  We have no doubt that the common-
fund doctrine has deep roots in equity.  See *Sprague*
v. *Ticonic Nat. Bank*, 307 U. S. 161, 164 (1939) (tracing
equity courts' authority over fees to the First Judiciary
Act).  Those roots, however, are set in the soil of unjust
enrichment: To allow "others to obtain full benefit from
the plaintiff's efforts without contributing . . . to the litiga-
tion expenses," we have often noted, "would be to enrich
the others unjustly at the plaintiff's expense."  *Mills* v.
*Electric Auto-Lite Co.*, 396 U. S. 375, 392 (1970); see *Boe-
ing*, 444 U. S., at 478; *Trustees* v. *Greenough*, 105 U. S.
527, 532 (1882); *supra,* at 6–7 and n. 4.  And as we have
just explained, principles of unjust enrichment give way

when a court enforces an equitable lien by agreement. See *supra,* at 8–9. The agreement itself becomes the measure of the parties' equities; so if a contract abrogates the common-fund doctrine, the insurer is not unjustly enriched by claiming the benefit of its bargain. That is why the Government, like McCutchen, fails to produce a single case in which an equity court applied the common-fund rule (any more than the double-recovery rule) when a contract provided to the contrary. Even in equity, when a party sought to enforce a lien by agreement, all provisions of that agreement controlled. So too, then, in a suit like this one.

The result we reach, based on the historical analysis our prior cases prescribe, fits lock and key with ERISA's focus on what a plan provides. The section under which this suit is brought "does not, after all, authorize 'appropriate equitable relief' *at large*," *Mertens*, 508 U. S., at 253 (quoting §1132(a)(3)); rather, it countenances only such relief as will enforce "*the terms of the plan*" or the statute, §1132(a)(3) (emphasis added). That limitation reflects ERISA's principal function: to "protect contractually defined benefits." *Massachusetts Mut. Life Ins. Co.* v. *Russell*, 473 U. S. 134, 148 (1985). The statutory scheme, we have often noted, "is built around reliance on the face of written plan documents." *Curtiss-Wright Corp.* v. *Schoonejongen*, 514 U. S. 73, 83 (1995). "Every employee benefit plan shall be established and maintained pursuant to a written instrument," §1102(a)(1), and an administrator must act "in accordance with the documents and instruments governing the plan" insofar as they accord with the statute, §1104(a)(1)(D). The plan, in short, is at the center of ERISA. And precluding McCutchen's equitable defenses from overriding plain contract terms helps it to remain there.

### III

Yet McCutchen's arguments are not all for naught. If the equitable rules he describes cannot trump a reimbursement provision, they still might aid in properly construing it. And for US Airways' plan, the common-fund doctrine (though not the double-recovery rule) serves that function. The plan is silent on the allocation of attorney's fees, and in those circumstances, the common-fund doctrine provides the appropriate default. In other words, if US Airways wished to depart from the well-established common-fund rule, it had to draft its contract to say so—and here it did not.[7]

Ordinary principles of contract interpretation point toward this conclusion. Courts construe ERISA plans, as they do other contracts, by "looking to the terms of the plan" as well as to "other manifestations of the parties'

_____

[7] The dissent faults us for addressing this issue, but we think it adequately preserved and presented. The language the dissent highlights in McCutchen's brief in opposition, indicating that the plan clearly abrogates the common-fund doctrine, comes from his description of *US Airways'* claim in the District Court. See *post*, at 1 (opinion of SCALIA, J.); Brief in Opposition 5. *McCutchen's* argument in that court urged the very position we adopt—that the common-fund doctrine applies because the plan is silent. See App. to Pet. for Cert. 30a; Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment in No. 2:08–cv–1593 (WD Pa., Dec. 4, 2011), Doc. 33, pp. 12–13 ("If [US Airways] wanted to exclude a deduction for attorney fees, it easily could have so expressed"). To be sure, McCutchen shifted ground on appeal because the District Court ruled that Third Circuit precedent foreclosed his contract-based argument, see App. to Pet. for Cert. 31a; the Court of Appeals' decision then put front-and-center his alternative contention that the common-fund rule trumps a contract. But both claims have the same basis (the nature and function of the common-fund doctrine), which the parties have disputed throughout this litigation. And similarly, the question we decide here is included in the question presented. The principal clause of that question asks whether a court may use "equitable principles to rewrite contractual language." Pet. for Cert. i. We answer "not rewrite, but inform"—a reply well within the question's scope.

intent." *Firestone Tire & Rubber Co.* v. *Bruch*, 489 U. S. 101, 113 (1989). The words of a plan may speak clearly, but they may also leave gaps. And so a court must often "look outside the plan's written language" to decide what an agreement means. *CIGNA Corp.* v. *Amara*, 563 U. S. \_\_\_, \_\_\_ (slip op., at 13); see *Curtiss-Wright*, 514 U. S., at 80–81. In undertaking that task, a court properly takes account of background legal rules—the doctrines that typically or traditionally have governed a given situation when no agreement states otherwise. See *Wal-Mart Stores, Inc. Assoc. Health & Welfare Plan* v. *Wells*, 213 F. 3d 398, 402 (CA7 2000) (Posner, J.) ("[C]ontracts . . . are enacted against a background of common-sense under- standings and legal principles that the parties may not have bothered to incorporate expressly but that operate as default rules to govern in the absence of a clear expression of the parties' [contrary] intent"); 11 R. Lord, Williston on Contracts §31:7 (4th ed. 2012); Restatement (Second) of Contracts §221 (1979). Indeed, ignoring those rules is likely to frustrate the parties' intent and produce perverse consequences.

The reimbursement provision at issue here precludes looking to the double-recovery rule in this manner. Both the contract term and the equitable principle address the same problem: how to apportion, as between an insurer and a beneficiary, a third party's payment to recompense an injury. But the allocation formulas they prescribe differ markedly. According to the plan, US Airways has first claim on the entire recovery—as the plan description states, on "any monies recovered from [the] third party"; McCutchen receives only whatever is left over (if any- thing). See *supra,* at 3. By contrast, the double-recovery rule would give *McCutchen* first dibs on the portion of the recovery compensating for losses that the plan did not cover (*e.g.,* future earnings or pain and suffering); US Airways' claim would attach only to the share of the recov-

ery for medical expenses. See *supra,* at 6–7. The express contract term, in short, contradicts the background equitable rule; and where that is so, for all the reasons we have given, the agreement must govern.

By contrast, the plan provision here leaves space for the common-fund rule to operate. That equitable doctrine, as earlier noted, addresses not how to allocate a third-party recovery, but instead how to pay for the costs of obtaining it. See *supra,* at 7. And the contract, for its part, says nothing specific about that issue. The District Court below thus erred when it found that the plan clearly repudiated the common-fund rule. See *supra,* at 4. To be sure, the plan's allocation formula—first claim on the recovery goes to US Airways—*might* operate on every dollar received from a third party, even those covering the beneficiary's litigation costs. But alternatively, that formula could apply to only the true recovery, after the costs of obtaining it are deducted. (Consider, for comparative purposes, how an income tax is levied on net, not gross, receipts.) See Dawson, Lawyers and Involuntary Clients: Attorney Fees From Funds, 87 Harv. L. Rev. 1597, 1606–1607 (1974) ("[T]he claim for legal services is a first charge on the fund and must be satisfied before any distribution occurs"). The plan's terms fail to select between these two alternatives: whether the recovery to which US Airways has first claim is every cent the third party paid or, instead, the money the beneficiary took away.

Given that contractual gap, the common-fund doctrine provides the best indication of the parties' intent. No one can doubt that the common-fund rule would govern here in the absence of a contrary agreement. This Court has "recognized consistently" that someone "who recovers a common fund for the benefit of persons other than himself" is due "a reasonable attorney's fee from the fund as whole." *Boeing Co.*, 444 U. S., at 478. We have understood that rule as "reflect[ing] the traditional practice in

courts of equity." *Ibid.*; see *Sprague*, 307 U. S., at 164–166; *supra,* at 11. And we have applied it in a wide range of circumstances as part of our inherent authority. See *Boeing Co.*, 444 U. S., at 474, 478; *Hall* v. *Cole*, 412 U. S. 1, 6–7 and n. 7 (1973); *Mills*, 396 U. S., at 389–390, 392; *Sprague*, 307 U. S., at 166; *Central Railroad & Banking Co. of Ga.* v. *Pettus*, 113 U. S. 116, 126–127 (1885); *Greenough*, 105 U. S., at 528, 531–533. State courts have done the same; the "overwhelming majority" routinely use the common-fund rule to allocate the costs of third-party recoveries between insurers and beneficiaries. 8A Appleman §4903.85, at 335 (1981); see Annot., 2 A. L. R. 3d 1441, §§2–3 (1965 and Supp. 2012). A party would not typically expect or intend a plan saying nothing about attorney's fees to abrogate so strong and uniform a background rule. And that means a court should be loath to read such a plan in that way.[8]

————————

[8] For that reason, almost every state court that has confronted the issue has done what we do here: apply the common-fund doctrine in the face of a contract giving an insurer a general right to recoup funds from an insured's third-party recovery, without specifically addressing attorney's fees. See, *e.g., Ex parte State Farm Mut. Auto. Ins. Co.*, 105 So. 3d 1199, 1212 and n. 6 (Ala. 2012); *York Ins. Group of Me.* v. *Van Hall*, 1997 ME 230, ¶8, 704 A. 2d 366, 369; *Barreca* v. *Cobb*, 95–1651, pp. 2–3, 5 and n. 5 (La. 2/28/96), 668 So. 2d 1129, 1131–1132 and n. 5; *Federal Kemper Ins. Co.* v. *Arnold*, 183 W. Va. 31, 33–34, 393 S. E. 2d 669, 671–672 (1990); *State Farm Mut. Auto. Ins. Co.* v. *Clinton*, 267 Ore. 653, 661–662, 518 P. 2d 645, 649 (1974); *Northern Buckeye Educ. Council Group Health Benefits Plan* v. *Lawson*, 154 Ohio App. 3d 659, 669, 2003–Ohio–5196, 798 N. E. 2d 667, 675; *Lancer Corp.* v. *Murillo*, 909 S. W. 2d 122, 126–127 and n. 2 (Tex. App. 1995); *Breslin* v. *Liberty Mut. Ins. Co.*, 134 N. J. Super. 357, 362, 341 A. 2d 342, 344 (App. Div. 1975); *Hospital Service Corp. of R. I.* v. *Pennsylvania Ins. Co.*, 101 R. I. 708, 710, 716, 227 A. 2d 105, 108, 111 (1967); *National Union Fire Ins. Co.* v. *Grimes*, 278 Minn. 45, 46–47, 51, 153 N. W. 2d 152, 153, 156 (1967); *Foremost Life Ins. Co.* v. *Waters*, 125 Mich. App. 799, 801, 805, 337 N. W. 2d 29, 30, 32 (1983) (citing *Foremost Life Ins. Co.* v. *Waters*, 88 Mich. App. 599, 602, 278 N. W. 2d 688, 689 (1979)); *Lee* v. *State Farm Mut. Auto. Ins. Co.*, 57 Cal. App. 3d 458, 462, 469, 129 Cal. Rptr.

The rationale for the common-fund rule reinforces that conclusion. Third-party recoveries do not often come free: To get one, an insured must incur lawyer's fees and expenses. Without cost sharing, the insurer free rides on its beneficiary's efforts—taking the fruits while contributing nothing to the labor. Odder still, in some cases—indeed, in this case—the beneficiary is made worse off by pursuing a third party. Recall that McCutchen spent $44,000 (representing a 40% contingency fee) to get $110,000, leaving him with a real recovery of $66,000. But US Airways claimed $66,866 in medical expenses. That would put McCutchen $866 in the hole; in effect, he would pay for the privilege of serving as US Airways' collection agent. We think McCutchen would not have foreseen that result when he signed on to the plan. And we doubt if even US Airways should want it. When the next McCutchen comes along, he is not likely to relieve US Airways of the costs of recovery. See *Blackburn* v. *Sundstrand Corp.*, 115 F. 3d 493, 496 (CA7 1997) (Easterbrook, J.) ("[I]f . . . injured persons could not charge legal costs against recoveries, people like [McCutchen] would in the future have every reason" to make different judgments about bringing suit, "throwing on plans the burden and expense of collection"). The prospect of generating those strange results again militates against reading a general reimbursement provision—like the one here—for more than it is worth. Only if US Airways' plan expressly addressed the costs of recovery would it alter the common-fund doctrine.

## IV

Our holding today has two parts, one favoring US Airways, the other McCutchen. First, in an action brought under §502(a)(3) based on an equitable lien by agreement, the terms of the ERISA plan govern. Neither general

———————
271, 273–274, 278 (1976).

principles of unjust enrichment nor specific doctrines reflecting those principles—such as the double-recovery or common-fund rules—can override the applicable contract. We therefore reject the Third Circuit's decision. But second, the common-fund rule informs interpretation of US Airways' reimbursement provision. Because that term does not advert to the costs of recovery, it is properly read to retain the common-fund doctrine. We therefore also disagree with the District Court's decision. In light of these rulings, we vacate the judgment below and re-mand the case for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 11–1285

_____

US AIRWAYS, INC., IN ITS CAPACITY AS FIDUCIARY AND PLAN ADMINISTRATOR OF THE US AIRWAYS, INC. EMPLOYEE BENEFITS PLAN, PETITIONER *v.* JAMES E. MCCUTCHEN ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

[April 16, 2013]

JUSTICE SCALIA, with whom THE CHIEF JUSTICE, JUSTICE THOMAS, and JUSTICE ALITO join, dissenting.

I agree with Parts I and II of the Court's opinion, which conclude that equity cannot override the plain terms of the contract.

The Court goes on in Parts III and IV, however, to hold that the terms are *not* plain and to apply the "common-fund" doctrine to fill that "contractual gap," *ante,* at 14. The problem with this is that we granted certiorari on a question that presumed the contract's terms were unambiguous—namely, "where the plan's terms give it an absolute right to full reimbursement." Pet. for Cert. i. Respondents interpreted "full reimbursement" to mean what it plainly says—reimbursement of *all* the funds the Plan had expended. In their brief in opposition to the petition they conceded that, under the contract, "a beneficiary is required to reimburse the Plan for any amounts it has paid out of any monies the beneficiary recovers from a third-party, *without any contribution to attorney's fees and expenses.*" Brief in Opposition 5 (emphasis added). All the parties, as well as the Solicitor General, have treated that concession as valid. See Brief for Petitioner 18, and n. 6; Brief for Respondents 29; Brief for United States as *Ami-*

*cus Curiae* 21.  The Court thus has no business deploying against petitioner an argument that was neither pre-served, see *Baldwin* v. *Reese*, 541 U. S. 27, 34 (2004), nor fairly included within the question presented, see *Yee* v. *Escondido*, 503 U. S. 519, 535 (1992).

I would reverse the judgment of the Third Circuit.