J-E01003-17

2017 PA Super 340

| | |
|---|---|
| CAROLYN RICKARD, ADMINISTRATRIX OF THE ESTATE OF WILLIAM RICKARD, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY | |
| | No. 774 WDA 2015 |

Appeal from the Order Entered April 28, 2015
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): 6805-2014

BEFORE: BENDER, P.J.E., BOWES, PANELLA, SHOGAN, LAZARUS, OLSON, DUBOW, MOULTON, and SOLANO, JJ.

CONCURRING OPINION BY BOWES, J.:           FILED OCTOBER 25, 2017

I reach the same result as the majority, but without reliance upon what I perceive as Administratrix's arbitrary characterization of the UIM claim as one for wrongful death.[1]  In my view, the Plan simply failed to establish a valid subrogation lien against the UIM proceeds that Administratrix recovered.

_____

[1] Administratrix did not file a formal wrongful death action against the insurer seeking the UIM benefits.  Nor do I believe that she could have.  A wrongful death claim is one statutorily authorized against a third-party tortfeasor.  The UIM claim herein was a contract claim pursuant to an insurance policy.

I agree with my distinguished colleagues that collateral estoppel is inapplicable. The issue before the bankruptcy court was not identical to the issue before us. The bankruptcy court found that the Plan had a lien against Mr. Rickard's projected UIM recovery based on his undisputed status as a "Covered Individual," his receipt of Plan benefits, and his concession that the Plan's interest in the UIM recovery was superior to his own. The real dispute in that proceeding focused on whether counsel's claim for attorney fees was superior to the Plan's lien. The bankruptcy court concluded it was not and refused to approve the proposed UIM settlement. Mr. Rickard died two days later without consummating the settlement or recovering the UIM funds.

Mrs. Rickard made a claim for the UIM benefits under the auspices of the Wrongful Death Act, 42 Pa.C.S. § 8301, and ANPAC issued a check. Although I do not believe the label she assigned to the claim controls or that it is material to our disposition, the Plan did not challenge her characterization of the claim as one for wrongful death. Consequently, this Court addressed the question as framed by Administratrix: whether a wrongful death beneficiary's recovery is subject to subrogation for medical benefits paid on behalf of the decedent during his lifetime. The majority answers that question in the negative. I submit that the real issue is whether UIM benefits recovered by Administratrix under the ANPAC policy were subject to subrogation by the Plan, and arrive at the same negative answer.

Under either scenario, collateral estoppel does not apply. The bankruptcy court did not determine whether the Plan was entitled to subrogation against amounts recovered by Administratrix. Preliminarily, we do not know whether the UIM benefits paid to Administratrix represent a recovery to which she was entitled in her own right under the ANPAC policy, or whether it represented payment on behalf of her deceased husband. Since the ANPAC policy is not contained in the record, and that issue was not developed, that question remains unanswered. In any event, the bankruptcy court did not address whether Mrs. Rickard was a "Covered Individual," whether she received benefits from the Plan, or whether her recovery of the UIM benefits was subject to subrogation, and thus, collateral estoppel has no application.

The Plan argues, in the alternative, that under U.S. Airways v. McCutchen, 133 S.Ct. 1537 (2013), the Plan documents controlled the right to subrogation and that its lien attached to the UIM recovery at the moment the bills were paid. However, we cannot verify that claim as the Plan documents are not contained in the certified record. We know from the bankruptcy court's opinion, however, that the Plan documents provided that the Plan was subrogated to "any sums recovered by the Covered Individual or their representative either by judgment, settlement, or any other means[.]" (emphasis added). Under the terms of the self-funded ERISA Plan, it made no difference whether these sums were designated as

wage loss, pain and suffering, or reimbursement for medical bills. The Plan apparently stated that sums recovered "shall be applied first to reimburse the [Plan] in full and therefore shall be deducted first from any recovery by or on behalf of the Covered Individual." The use of the term "sums recovered" would tend to refute the Plan's position that its lien attached to the UIM benefits at the moment the bills were paid. In any event, it was the Plan's burden to establish that Administratrix recovered the UIM benefits either as a covered individual or as a representative of a covered individual, in order to be entitled to subrogation. It failed to do so.

Finally, the Plan cites Gillette v. Wurst, 937 A.2d 430 (Pa. 2007), for the proposition that the surviving spouse in a wrongful death action cannot avoid the payment of a valid subrogation lien. In contrast to the facts herein, the surviving spouse in Gillette received workers' compensation death benefits and the insurer had a subrogation interest in any funds she recovered thereafter. She subsequently settled a wrongful death action and attempted to disclaim her interest in the recovery in order to defeat the workers' compensation insurer's subrogation interest. The Supreme Court held that she could not avoid the workers' compensation insurer's subrogation interest in sums she recovered under the wrongful death act by disclaiming her interest in favor of the remaining statutory beneficiaries.

In this case, as distinguished from Gillette, the Plan failed to prove that Administratrix received Plan benefits, or that she was a "covered

individual" or a covered individual's representative under the Plan for purposes of a subrogation lien. I submit that the ANPAC insurance policy and the Plan documents, rather than the designation of the claim as one for wrongful death, controlled whether the Plan had a valid subrogation lien against the UIM proceeds recovered by Administratrix. The Plan did not reference those documents in establishing its right to subrogation, nor did it include them in the certified record. Since the Plan sought to enjoin the proposed distribution, it had the burden to prove a valid subrogation lien, which it failed to do. For these reasons, I concur in the result of the majority.

Judges Olson, Dubow and Solano join this concurring opinion.