In the

# United States Court of Appeals
## For the Seventh Circuit

No. 19-2589

CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH
AND WELFARE FUND and CHARLES A. WHOBREY, Trustee,

*Plaintiffs-Appellees,*

*v.*

SHELBY L. HAYNES; N. GERALD DICUCCIO; and BUTLER,
CINCIONE & DICUCCIO,

*Defendants-Appellants.*

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17 C 6275 — **Virginia M. Kendall**, *Judge.*

———————

ARGUED MAY 22, 2020 — DECIDED JULY 20, 2020

———————

Before BAUER, EASTERBROOK, and WOOD, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Doctors removed Shelby
Haynes's gallbladder in 2013. She was injured in the process
and required additional surgery that led to more than
$300,000 in medical expenses. Her father's medical-benefits
plan (the Fund) paid these because Haynes was a "covered
dependent". The plan includes typical subrogation and re-

payment clauses: on recovering anything from third parties, a covered person must reimburse the Fund. In 2017 Haynes settled a tort suit against the hospital, and others, for $1.5 million. But she and her lawyers refused to repay the Fund, which brought this action to enforce the plan's terms under §502(a)(3) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §1132(a)(3).

Haynes concedes that the Fund paid her medical bills but insists that she never agreed to reimburse it. She did not sign a promise to follow the plan's rules and was not a participant (as opposed to a beneficiary). The district judge disagreed with her and granted summary judgment to the Fund for the full amount of its outlay. 397 F. Supp. 3d 1149 (N.D. Ill. 2019). Along the way, the district court enjoined Haynes, Haynes's malpractice lawyer, and the lawyer's firm from dissipating the proceeds of the settlement. The Fund named each of them as a defendant to avoid ambiguity about who possessed the money. See *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204, 214 (2002).

Section 502(a)(3) allows fiduciaries to bring actions to obtain "equitable relief … to enforce any provisions of this title or the terms of the plan". Defendants do not contest the judge's finding that the money at issue is traceable to the settlement, and they do not deny their possession and control of the proceeds. Indeed, in awarding interest and attorneys' fees and costs to the Fund, the district court found that Haynes's malpractice lawyer and his firm hold the principal in constructive trust. Hence the nature of the remedy sought—enforcement of a right to identifiable assets—is equitable. See, e.g., *Sereboff v. Mid Atlantic Medical Services, Inc.*,

547 U.S. 356, 362 (2006) (discussing restitution in premerger courts of equity).

But "equitable relief" under §502(a)(3) requires more than asking for an equitable remedy; the claim must be equitable as well. *Montanile v. Board of Trustees of the National Elevator Industry Health Benefit Plan*, 136 S. Ct. 651, 657–58 (2016). An action to enforce "the modern-day equivalent of an equitable lien by agreement" is one such basis. *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 98 (2013) (cleaned up). That's because a person who agrees to convey a specific thing "even before it is acquired" becomes a trustee on receiving title. *Sereboff*, 547 U.S. at 363–64; *Barnes v. Alexander*, 232 U.S. 117, 121 (1914). No one doubts that the Fund is a "fiduciary" or that it seeks to "enforce … the terms of the plan". Yet Haynes argues that *she* never agreed to anything. And her lack of assent removes the action from §502(a)(3)'s ambit, she insists. See 29 U.S.C. §1132(e)(1), (f); 28 U.S.C. §1331. We beg to differ.

The terms of the plan furnish beneficiaries with rights and obligations. For example, §§ 12.01 to 16.04 describe medical, dental, vision, and life-insurance benefits, and §11.06 makes these payable "to, or for the benefit of," those covered by the plan. Section 11.14 conditions payments on the Fund's subrogation and reimbursement rights, which extend to any covered person. Haynes is a beneficiary under the plan because her father—who worked under a Teamsters' Union collective bargaining agreement—signed and delivered a writing electing coverage for himself and his family. See Plan §3.02 (qualifying as a "covered dependent"); Plan §§ 1.09, 1.16–19, 1.22, 1.26–28, 1.50 (defining terms); 397 F. Supp. 3d at 1153.

Section 11.11 of the plan explains that "[t]he Fund is a self-funded employee benefit plan governed by" ERISA. That statute says that it applies to plans such as this. See 29 U.S.C. §1003(a). And it recognizes Haynes as a beneficiary because her father designated her as one under the plan's terms. 29 U.S.C. §1002(8). The Justices have repeatedly held that fiduciaries may bring actions against beneficiaries under §502(a)(3). See, e.g., *Sereboff*, 547 U.S. at 359, 369 (permitting a plan administrator to proceed against a covered employee and her beneficiary husband). See also *Harris Trust & Savings Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 246 (2000) ("But §502(a)(3) admits of no limit … on the universe of possible defendants."). That's all the Fund needs to prevail.

Haynes wants to replace the statutory terms, and those of the plan, with principles of contract law. Doubtless ordinary contract rules should be used to flesh out provisions on which ERISA or a plan are silent or ambiguous. See, e.g., *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427 (2015). But neither the plan nor the statute is in need of supplementation. The district judge found that Haynes was a beneficiary under an ERISA plan. 397 F. Supp. 3d at 1156–58. The plan itself depends on the assent of an employer (its sponsor) and a fiduciary (the Fund) that manages its operation. Employees (called participants) get the benefits without a separate contract, although some optional features (such as covering dependents) are contractual in nature. A participant's family member is a kind of third-party beneficiary, whose rights under the plan do not depend on personal assent. Such a person may reject an unwanted benefit by disclaiming it. *Restatement (Second) of Contracts* §306 & cmts. a–b (1981). See also *Olson v. Etheridge*, 177 Ill. 2d 396, 404 (1997). But Haynes

doesn't argue that she disclaimed the plan's financial aid and paid the bills herself.

Having accepted the plan's benefits, Haynes must accept the obligations too. That's what the plan says, and ordinary principles of contract law are in accord. See *Restatement (Second) of Contracts* §309(4) & cmt. c. See also *Olson*, 177 Ill. 2d at 404–05; *Liu v. Mund*, 686 F.3d 418, 421 (7th Cir. 2012); *Holbrook v. Pitt*, 643 F.2d 1261, 1273 & n.24 (7th Cir. 1981). An equitable lien by agreement "serves to carry out a contract's provisions." *McCutchen*, 569 U.S. at 98. In this case that means the plan's subrogation and reimbursement clauses. The Fund did not need to require beneficiaries to execute those provisions separately. See *Preze v. Pipefitters Welfare Fund*, 5 F.3d 272 (7th Cir. 1993) (recognizing a limited exception). And the provisions confer rights to specified assets. 397 F. Supp. 3d at 1152–55.

Haynes asks us to ignore all of this because the surgeries took place three months after her eighteenth birthday, and the Fund did not ask for her consent as an adult. Her attorney suggested that the insurance industry might benefit from more paperwork and an "algorithm" for obtaining the assent of former minors. But, as should be clear by this point, Haynes's transition to adulthood is irrelevant. If she had been an adult throughout (as, say, a participant's spouse) she would have been required to reimburse the plan. So too if she had been a minor throughout. Why should it matter if she makes the transition to adulthood after her father elects to bring her within the plan's coverage?

If fiduciaries can reach the recovery of a participating employee's spouse, how is Haynes any different? See, e.g., *Sereboff*, 547 U.S. at 359 (discussing the reimbursement of

beneficiaries' medical expenses). Section 3.30(e) of the plan continues a child's status as a "covered dependent" through age 26, and Haynes doesn't argue that other provisions terminated that status. Neither the Act nor any rule of contract law alters this. Minors can treat some promises as voidable, but adults (which Haynes was at the time of her surgeries) cannot. See *Restatement (Second) of Contracts* §14 & cmt. a. We doubt that 17 year olds would be happy to learn that, unless they sign some papers on their next birthdays, they lose medical coverage under ERISA plans. The absence of a beneficiary's signed writing—at age 13 or 18 or 48—doesn't invalidate any of the plan's terms.

Haynes contends that counsel should be able to keep a share of the settlement under equitable principles. But §11.14(j) of the plan expressly forbids this approach, and "if a contract abrogates the common-fund doctrine, the insurer is not unjustly enriched by claiming the benefit of its bargain." *McCutchen*, 569 U.S. at 100.

Haynes also maintains that she shouldn't be bound by this provision because a summary plan description does not explain that the plan displaces the common-fund doctrine. Yet the Fund makes the plan available online, mails printed copies on request, and sent the relevant provisions to her lawyer before the malpractice settlement. The point of a summary plan description is to summarize; some terms necessarily are omitted. At all events, if the plan and the summary plan description conflict, the plan controls. *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011).

Finally, Haynes's complaint about the district court's decision to exclude an expert's report, 2018 U.S. Dist. LEXIS 234265 (N.D. Ill. Oct. 24, 2018), is beside the point; this case

has been resolved on legal grounds that are unaffected by any expert's conclusions, admissible or not.

Neither the plan, the Act, nor the common law excuses Haynes from her obligation to reimburse the Fund. Her status as a beneficiary—whether minor or adult—doesn't deprive a fiduciary of the ability to obtain appropriate equitable relief under §502(a)(3) of the Act.

 AFFIRMED