J-A10024-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| CAROLYN RICKARD, ADMINISTRATRIX OF THE ESTATE OF WILLIAM RICKARD, DECEASED, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY, | |
| Appellee | No. 774 WDA 2015 |

Appeal from the Order Entered April 28, 2015
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): No. 6805-2014

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and SHOGAN, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED AUGUST 09, 2016**

Carolyn Rickard, Administratrix of the Estate of William Rickard, appeals from the order entered April 28, 2015, which denied Appellant's petition for distribution of benefits secured through an insurance claim settlement.  We affirm.

In November 2012, Mr. Rickard was severely injured, while operating his motor vehicle, when he was struck from behind by another vehicle.  At the time, Mr. Rickard maintained an automobile insurance policy, including underinsurance coverage of $250,000.00, through American National Property and Casualty Company (ANPAC).

Mr. Rickard's accident was work-related. As such, the Western Pennsylvania Teamsters Welfare Benefit Plan (the Plan) paid $279,498.03 in related medical bills and disability payments.[1]

Prior to the accident, Mr. and Mrs. Rickard had commenced bankruptcy proceedings. The bankruptcy court appointed counsel to prosecute accident litigation and retained the right to approve or disapprove any settlement while the Rickard matter was in bankruptcy. In January 2014, counsel secured settlement for the full amount of the ANPAC underinsurance coverage and filed a motion with the bankruptcy court for distribution.[2]

The Plan intervened and objected to any distribution of funds to Mr. Rickard. According to the Plan, its subrogated interest in any settlement was superior to the interests of the Rickards or their counsel. The bases for its argument were excerpts of the terms governing the Plan:

> Any sums recovered by the Covered Individual … or their representative either by judgment, settlement, or any other means, and regardless of whether such sums are designated as reimbursement for medical expenses incurred or anticipated, past or future wage loss, pain and suffering, or any other form of damages, **shall be applied first to reimburse the [Plan] in**

---

[1] The Plan is a self-funded employee welfare benefit plan, as defined pursuant to the Employee Retirement Income Security Act [ERISA] of 1974, 29 U.S.C.A. § 1001 *et seq*.

[2] The Rickards agreed to pay appointed counsel a contingency fee of up to 40% of any settlement secured on Mr. Rickard's behalf. Thus, the proposed distribution included payment of $100,000.00 to counsel; $1,000.00 to bankruptcy counsel; and the remaining balance of $149,000.00 to Mr. Rickard.

**full and therefore shall be deducted first from any recovery by or on behalf of the Covered Individual**.

Appellant's Petition, Attachment (***In re: William J. Rickard and Carolyn M. Rickard***, Bankr. No. 10-24821-JAD (Bankr. W.D.Pa. 10/20/2014) (memorandum opinion at 4) (quoting from an audio recording of a hearing held in the matter) (emphasis added in memorandum)).  Further, the terms indicate that the Plan "will not be responsible for the Covered Individual's attorney's fees or other costs unless the [Plan] has agreed in writing to pay such fees or costs." ***Id.*** (Attachment, at 7).[3]

Following a hearing, the bankruptcy court concluded that the Plan's interest was superior to the interests of the Rickards and their counsel. Accordingly, the court denied the Rickards' motion for distribution. ***See id.*** (Attachment, at 1 and 11).  No appeal was taken from the bankruptcy court's decision.

Shortly thereafter, Mr. Rickard died of his injuries.  Mrs. Rickard claims, as administratrix of her late husband's estate, that she commenced a

---

[3] The record adduced below is sparse.  Neither the ANPAC insurance policy, nor the operative Plan language were introduced into evidence or attached to Appellant's petition.  We cite the Plan language, and rely upon it, because the parties stipulated to its accuracy before the bankruptcy court and because Appellant attached these excerpts (as quoted in the bankruptcy court's memorandum opinion) to its petition.

wrongful death action.[4]    Appellant's counsel again secured a settlement agreement with ANPAC, which re-issued a check for $250,000.00, payable to Mrs. Rickard as administratrix.    **See** Petition at ¶ 14.    Then, Appellant petitioned the orphans' court for distribution of these settlement funds. Again, the Plan intervened.    According to the Plan, by virtue of the bankruptcy court's prior decision, Appellant was collaterally estopped from seeking distribution of the funds.    Moreover, the Plan re-asserted its first priority lien on the funds.

Following a hearing, the orphans' court determined that the bankruptcy court's decision controlled, and thus, Appellant was estopped from seeking distribution of the settlement funds.    **See** Orphans' Court Memorandum, 04/27/2015, at 2 (unnumbered).    In the alternative, the orphans' court concluded that the Plan's subrogated interest was superior to the Rickards and their counsel.    **Id.**

Appellant timely appealed, raising the following issues for our consideration:[5]

---

[4] There is no underlying complaint alleging wrongful death, and no judgment awarding damages for wrongful death, only pleadings in a petition seeking distribution of insurance funds for the purpose of compensating counsel, Mrs. Rickard, and Sarah Rickard (decedent's minor child) "pursuant to the Pennsylvania Wrongful Death Act and only the Pennsylvania Wrongful Death Act."  Petition for Order of Distribution (Petition), 11/18/2014, at ¶ 20.

[5] The orphans' court did not direct Appellant to file a Pa.R.A.P. 1925(b) statement.

1. [Whether] wrongful death beneficiaries, [a] spouse and minor child, [are] precluded from recovering benefits by lien language in an ERISA [h]ealth and [w]elfare [p]lan[,] when neither the lien amounts nor lien language apply to either of the beneficiaries[;]

2. [Whether] the instant bankruptcy court order[,] which does not address whether an ERISA [f]und may extend its subrogation lien to a decedent's wife and minor daughter [may] serve as a basis to collaterally estop an orphans' court claim for wrongful death damages made after the close of the bankruptcy matter[; and]

3. [Whether] the Supreme Court's holding in **U.S. Airways v. McCutchen**, 133 S.Ct. 1537 (2013)[,] require[s] that a subrogation lien on a decedent's recovery for medical benefits paid out by the lienholder during the decedent's lifetime extend[s] to his wife and minor daughter's recovery in a wrongful death action[.]

Appellant's Brief at 4.

Initially, we must address the Plan's renewed argument that Appellant's petition is barred by the doctrine of collateral estoppel. **See** Appellee's Brief at 9, 12-16. According to the Plan, the issue of whether the $250,000.00 settlement of insurance proceeds from ANPAC belongs to the Plan, based upon its subrogation lien, has been fully litigated and decided in its favor by the bankruptcy court. Appellant did not appeal this decision, which is now final. The Plan concludes, therefore, that Appellant is estopped from re-litigating this issue. We agree.

> The doctrine of collateral estoppel precludes relitigation of an issue determined in a previous action if: (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final adjudication on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to

the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment. Collateral estoppel relieves parties of the cost and vexation of multiple lawsuits, conserves judicial resources, and, by preventing inconsistent decisions, encourages reliance on adjudication.

*Office of Disciplinary Counsel v. Kiesewetter*, 889 A.2d 47, 50-51 (Pa. 2005) (internal citations omitted).

Here, there is no question that the doctrine applies and works to preclude our further consideration of Appellant's arguments. The dispositive issue before this Court, as it was before the bankruptcy court, is whether the Plan's subrogated interest in any settlement, as defined by the Plan's governing terms, is superior to the interests of the Rickards or their counsel. Following a full and fair opportunity to litigate this issue, the bankruptcy court ruled in favor of the Plan. Its ruling is final. Accordingly, Appellant is estopped from re-litigating this issue. *Id.*

Appellant suggests that its claim involves different parties than were involved in the prior, bankruptcy proceedings. *See* Appellant's Brief at 15-16. This is simply inaccurate. The relevant party involved in the prior proceedings was Mr. Rickard, the named insured and designated recipient of the ANPAC settlement funds, as well as the beneficiary of the Plan's medical benefits. Here, the only relevant party of record is Mrs. Rickard, solely in

her capacity as administratrix of her deceased husband's estate.[6]  Thus, the parties involved are the same or sufficiently in privity as to satisfy the requirements of the doctrine.  *Id.*; *see also, e.g.*, *Ammon v. McCloskey*, 655 A.2d 549, 554 (Pa. Super. 1995) ("In its broadest sense, 'privity' is defined as mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right.") (citation omitted).

For these reasons, we affirm the order of the orphans' court.[7]

Order affirmed.

President Judge Gantman joins this memorandum.

Judge Shogan files a dissenting memorandum.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date:  8/9/2016

_____

[6] Neither Mrs. Rickard, on her own behalf, nor Ms. Sarah Rickard are parties to this appeal.

[7] Though we need not reach the merits of the lower court's substantive analysis, relied upon in the alternative, we note our agreement that this matter is controlled by *U.S. Airways v. McCutchen*, 133 S.Ct. 1537 (2013).  *See* Orphans' Court Memorandum, 04/27/2015, at 2-3 (unnumbered).